IN RE the COMMITMENT of Shawn D. SCHULPIUS:

STATE of Wisconsin, Petitioner-Respondent,

v.

Shawn D. SCHULPIUS,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2002AP1056. Oral argument October 28, 2004 and October 6, 2005.—Decided January 10, 2006.*

2006 WI 1

(Also reported in 707 N.W.2d 495.)

45

For the respondent-appellant-petitioner there were briefs and oral argument by *Ellen Henak,* assistant state public defender.

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

An amicus curiae brief was filed by *William J. Domina* and *John Jorgensen,* Milwaukee, on behalf of Milwaukee County Corporation Counsel.

An amicus curiae brief was filed by *Nicholas L. Chiarkas, Marla J. Stephens,* and *Kellie M. Krake,* Madison, on behalf of the Office of the State Public Defender.

An amicus curiae brief was filed by *Andrew T. Phillips, Evan N. Claditis* and *Prentice & Phillips LLP,* Milwaukee, on behalf of Wisconsin Counties Association.

An amicus curiae brief was filed by *Neil Gebhart,* Madison, on behalf of Wisconsin Department of Health and Family Services, and there was oral argument by *Diane Welsh.*

¶ 1. N. PATRICK CROOKS, J. Petitioner Shawn D. Schulpius (Schulpius) appeals from a published decision of the court of appeals, affirming a circuit court order which denied Schulpius's motion to enforce a previous circuit court order directing that he be placed on supervised release.[1] We address three principal issues on appeal. First, is Schulpius entitled to outright

---

[1] *State v. Schulpius,* 2004 WI App 39, 270 Wis. 2d 427, 678 N.W.2d 369.

release from his Wis. Stat. ch. 980 (2003–04) commitment because the Department of Health and Family Services (DHFS), in conjunction with Milwaukee County, was unable to place him in an appropriate location for the period between the initial supervised release determination and the circuit court's ultimate determination that Schulpius is too dangerous for such placement? Second, in light of our decision in *State v. Sprosty*, 227 Wis. 2d 316, 595 N.W.2d 692 (1999), should this court issue an order directing the DHFS to create an appropriate residential facility or dwelling in Milwaukee County for persons presently authorized for supervised release? Finally, is Schulpius or another individual committed under Chapter 980 (2003–04), who is authorized for supervised release but not yet expeditiously placed, entitled to seek a remedy such as monetary damages?

¶ 2. We affirm the decision of the court of appeals. We conclude that the November 2000 order granting the State of Wisconsin's (State's) motion for reconsideration, and finding Schulpius not appropriate for supervised release, was a valid, final, appealable order, and therefore, he is not entitled to outright release from his Chapter 980 commitment. Even though Schulpius's appeal is moot, we determine that the issues should be considered. We determine that *State v. Morford,* 2004 WI 5, 268 Wis. 2d 300, 674 N.W.2d 349, is inapplicable to this case, as Schulpius never appealed from, and therefore waived any objection to, the November 2000 order granting the State's Wis. Stat. § 806.07(1)(h) (1999–2000)[2] motion to reconsider supervised release. We do conclude, however, that there was a procedural due process

[2] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

violation. We also conclude that our decision in *Sprosty* is still valid, and allows a circuit court to order the DHFS to create an appropriate residential facility or dwelling to accommodate a Chapter 980 order for supervised release. However, for two reasons, we conclude that issuing such an order is unnecessary in this case. Such a residential facility or dwelling for supervised release would be meaningless for Schulpius at this time, as he was determined to be inappropriate for supervised release in November 2000, and that determination has not been changed. Second, we are satisfied that the DHFS has made substantial attempts to establish a residential facility or dwelling that would enable individuals committed under Chapter 980 to be placed on supervised release in Milwaukee County. Finally, because the order of November 2000 declaring Schulpius inappropriate for supervised release remains valid, even though there was a procedural due process violation, we decline to determine what remedy, if any, Schulpius would be entitled to seek. We further decline to address what might be an appropriate remedy for another individual, committed under Chapter 980 who, under different circumstances, has been authorized for supervised release but not yet expeditiously placed.

I

¶ 3. Because this case is procedurally convoluted, we set forth an abbreviated version of the facts relevant to render a decision. A more complete discussion of the facts and procedural history can be found in the court of appeals' decision. *See State v. Schulpius,* 2004 WI App 39, ¶¶ 3–32, 270 Wis. 2d. 427, 678 N.W.2d 369.

¶ 4. In December 1991 Schulpius, one week shy of his 18th birthday, pled guilty to, and was convicted of, first-degree sexual assault of a four-year-old boy for

whom he had been babysitting. He was sentenced as an adult to an indeterminate term of not more than five years in the Wisconsin prison system.

¶ 5. At the time of his conviction in 1991, Schulpius already had a long history of sexually assaulting minors. "Schulpius's 'first group of sex offenses' started when Schulpius was fourteen," when he began molesting his six-year-old step-sister. *Id.,* ¶ 4. As a result of the assaults, "Schulpius was placed at a mental-health facility" for approximately three months, where he received individual therapy treatment. *Id.* However, six months later, "Schulpius 'began re-assaulting his step-sister. . . .' " *Id.* During this period, Schulpius also assaulted his one-year-old half-brother. *Id.*

¶ 6. "When Schulpius was fifteen, he began assaulting girls in his neighborhood and, also, one of his biological sisters, who was then approximately eleven or twelve [years old]. He also resumed sexually assaulting his younger step-sister." *Id.,* ¶ 6. He was sent to another treatment facility. At age 17, Schulpius left the treatment facility and entered a group home. *Id.* "When he lost one of his two part-time jobs, he 'offered to babysit for a woman friend's young son.' The child was the four-year-old boy whom Schulpius assaulted in the waiver-to-adult-court case that ultimately resulted in his imprisonment. . . ." *Id.*

¶ 7. In 1995 the State filed a Chapter 980 petition just prior to Schulpius's scheduled release from prison, and Schulpius was adjudicated a sexually violent person. Milwaukee County Circuit Court, Judge John Franke, committed Schulpius to a secure mental facility, unless the DHFS determined that there was an appropriate community facility to house him.

¶ 8. On July 15, 1997, Judge Franke entered an order, nunc pro tunc to July 31, 1996, directing that Schulpius be placed on supervised release pursuant to Wis. Stat. § 980.06(2)(c)-(d)(1995–96). However, the DHFS was unable to place Schulpius on supervised release due to the lack of appropriate facilities in Milwaukee County. Despite numerous court orders directing the DHFS, in conjunction with Milwaukee County, to prepare an appropriate plan for Schulpius's supervised release, and several unsuccessful attempts to place Schulpius in Milwaukee County, or in another Wisconsin county, such as Pepin, Schulpius remained in secure custody at the Wisconsin Resource Center.

¶ 9. On October 27, 1999, the circuit court entered an order declaring that Chapter 980 was being unconstitutionally applied to Schulpius. The order directed that Schulpius be released from secure custody and placed on supervised release. In response, the State filed a motion for reconsideration under Wis. Stat. § 806.07(1)(h). On November 29, 2000, Judge Franke granted the State's motion for reconsideration and determined that Schulpius was no longer appropriate for supervised release.

¶ 10. After the November 2000 decision to revoke the order for supervised release, Judge Franke "was succeeded by the Honorable John J. DiMotto, pursuant to the rotation-of-judges plan in Milwaukee County." *Schulpius,* 270 Wis. 2d 427, ¶ 29.

¶ 11. On November 26, 2001, Schulpius moved to enforce the circuit court's order of October 27, 1999, and for a final order releasing him from secure custody. On January 17, 2002, the circuit court denied Schulpius's motion to enforce its October 27, 1999 order. Schulpius appealed this decision to the court of appeals.

¶ 12. On appeal, Schulpius argued that he had been denied both procedural and substantive due process because the DHFS had failed to place him on supervised release when so ordered. *Id.*, ¶ 33. The court of appeals, in a majority opinion authored by Judge Ralph Adam Fine, rejected Schulpius's substantive and procedural due process claims. *Id.*, ¶¶ 34, 40. In rejecting Schulpius's substantive due process argument, the court of appeals reasoned that substantive due process is violated only in the most egregious and outrageous of circumstances, and that this case did not involve such circumstances. *Id.*, ¶¶ 37–40. The court further concluded that the DHFS had acted in good faith in attempting to find an appropriate facility in the community in which to place Schulpius. *Id.*, ¶ 38. Finally, the court of appeals determined that although Schulpius remained confined in violation of the circuit court's order for more than four years, such confinement was ultimately justified under a balancing test, where the potential harm to society that Schulpius's release might cause was weighed against the potential benefits that might flow from the cessation of Schulpius's confinement in a secure facility. *Id.*, ¶ 42.

¶ 13. In his dissent, court of appeals Judge Charles B. Schudson concluded that Schulpius's substantive due process rights had indeed been violated by *"more than four years* of unlawful confinement. . . ." *Id.*, ¶ 49 (Schudson, J., dissenting) (emphasis in original). As a remedy, Judge Schudson suggested that Schulpius be ordered to supervised release. *Id.*, ¶ 63. He reasoned that the status quo was unacceptable, and that anything short of supervised release would create future disincentives for officials to comply with court orders and would create overcrowded institutions, which would eventually lead to the abandonment of Chapter

53

980 as a viable means to deal with sexual predators. *Id.*, ¶ 64.

¶ 14. Schulpius appealed the decision of the court of appeals, and this court granted his petition for review on April 20, 2004.

II

■

¶ 15. Although we "generally decline to decide moot issues . . ." under certain circumstances we may choose to do so. *Morford*, 268 Wis. 2d 300, ¶ 7 (citing *In re John Doe Proceeding*, 2003 WI 30, ¶ 19, 260 Wis. 2d 653, 660 N.W.2d 260). This court has determined that it may decide otherwise moot issues if they meet at least one of four exceptions to the mootness rule, that is if the issue:

> (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

*Id.*

■

¶ 16. The issues before us satisfy at least two of the four exceptions to the mootness rule. First, this case is of great public importance, as it "implicates both the safety of the public and the rights of the detained individual." *Id.*, ¶ 9. Second, the issues presented "recur[] with some frequency." *Id.*, ¶ 10. As we noted in our November 9, 2004 order in this case, the DHFS has repeatedly failed to place individuals committed under Chapter 980 on supervised release in Milwaukee County when so ordered by a Milwaukee County Circuit

54

Court. Because we determine that the issues raised in this appeal satisfy exceptions to the mootness rule, we will address them. *Id.,* ¶ 12.

¶ 17. Schulpius's assertion that the state's inability to place him on supervised release deprived him of both substantive and procedural due process, presents issues of law that we analyze de novo. *See State v. Post,* 197 Wis. 2d 279, 301, 541 N.W.2d 115 (1995).

### III

¶ 18. The first issue we consider is whether Schulpius is entitled to outright release from his Chapter 980 commitment, because the DHFS, in conjunction with Milwaukee County, was unable to place him in an appropriate residential facility or dwelling for the period between the initial supervised release determination and the circuit court's ultimate determination that he was and is too dangerous for such placement. It is necessary, in order to resolve the issue of outright release, to address his claims of constitutional and statutory violations.

¶ 19. We agree with the court of appeals that Schulpius is not entitled to outright release. We also affirm the court of appeals' determination that Schulpius is not entitled to his alternate request for immediate release from secure custody. Moreover, we conclude that the November 2000 order, whereby the circuit court revoked its previous order for supervised release, was a valid, final, and appealable order.[3]

---

[3] On this matter, we disagree with the court of appeals. In a footnote, the court of appeals addressed several issues raised by the parties that it considered to be "peripheral," including

¶ 20. The procedure surrounding the November 2000 order merits further explanation. As discussed above, on October 27, 1999, the circuit court held that Chapter 980 was being unconstitutionally applied to Schulpius, and it ordered that he be released from secure custody. Thereafter, the State filed a motion for reconsideration in the circuit court, and also "petitioned the court of appeals for permission to appeal a nonfinal order. . . ." *State v. Schulpius,* 2001 WI 69, ¶ 4, 244 Wis. 2d 401, 628 N.W.2d 349 (citation omitted). The court of appeals granted the State's petition, after which Schulpius petitioned this court to bypass the court of appeals. *Id.* Schulpius's motion was granted, and oral argument was scheduled for December 1, 2000.

¶ 21. On November 29, 2000, the circuit court "granted the State's motion for reconsideration, determined that Schulpius was no longer suitable for supervised release, and ordered him committed to the Wisconsin Resource Center." *Id.,* ¶ 5. In response, the "State filed a notice of voluntary dismissal in this court on November 30, 2000, and Schulpius responded with a motion for order rejecting notice of voluntary dismissal." *Id.*

¶ 22. This court held oral argument on December 1, 2000, and after receiving supplemental briefing, the court was equally divided on whether to accept the State's notice of voluntary dismissal. *Id.,* ¶ 8. Therefore, this court denied both Schulpius's motion for an order rejecting the notice and the State's notice for voluntary dismissal. This court then vacated its deci-

whether the November 2000 order was a final order. *Schulpius,* 270 Wis. 2d 427, ¶ 33 n.8. The court of appeals concluded that the November order was not, on its face, a "final order" in that it contemplated entry of a reifying order when it was issued. *Id.* We address the issue more fully in our discussion at ¶¶ 23–26.

sion to grant bypass, and remanded the cause back to the court of appeals for determination of further proceedings. *Id.*, ¶ 9.

¶ 23. Schulpius never appealed the November 29, 2000 order based on the State's motion for reconsideration under Wis. Stat. § 807.06(1)(h).[4] Rather, on November 26, 2001, Schulpius filed a motion to enforce the circuit court's decision and order of October 27, 1999, and for a final order to release Schulpius from the physical custody of the DHFS. *Schulpius,* 270 Wis. 2d 427, ¶ 32.

¶ 24. In February 2004 this court decided *Morford* which held that when an individual committed under Chapter 980 is awaiting supervised release, the appro-

---

[4] The November 2000 order was somewhat confusing in the concluding paragraph, which stated:

> For the reasons set forth above, it is hereby ordered that the state's motion for reconsideration is granted and that the order for supervised release is vacated. It is further ordered that Shawn Schulpius be committed to institutional care pursuant to section 980.06, still subject, however, to the decision and order requiring release entered in this case on October 27, 1999. As required by SCR 70.15, a form order for such commitment will be separately entered.

Therefore, although the order determined that Schulpius was no longer suitable for supervised release and ordered him committed to secure custody, someone could interpret the circuit court order as also reaffirming its earlier order that Schulpius be placed on supervised release. *Schulpius,* 270 Wis. 2d 427, ¶ 28.

The two parts of the order seem somewhat inconsistent. However, we conclude that the purpose of the November 2000 order was unquestionably to vacate the earlier order for supervised release, and to commit Schulpius to institutional care, despite the reference to the earlier order. This position is confirmed in Judge Franke's letter to the parties of December 1, 2000, indicating that no further order was necessary because Schulpius was already in secure custody.

priate mechanism to revoke that supervised release is Wis. Stat. § 980.08(6m), rather than Wis. Stat. § 806.07(1)(h). *Morford,* 268 Wis. 2d 300, ¶ 5.

¶ 25. Based on *Morford,* Schulpius now maintains that the November 2000 order revoking the earlier order for supervised release was invalid, as it was brought and decided under the wrong statute. It is Schulpius's position that because the order was invalid, he remains on supervised release. Further, Schulpius argues that the November 2000 order was not a final order and therefore not appealable. He maintains that he did appeal the only appropriate final order, that of November 2001.

¶ 26. We disagree with Schulpius's characterization of the November 2000 order. Even though the circuit court did not initially characterize it as a final order, it was clear that the November 2000 order was intended to resolve all litigation then pending between the parties, and the circuit court so indicated in a letter to the parties on December 1, 2000, stating that it would not enter any further order.[5] As we explained in *Harder v. Pfitzinger:*

> We conclude that when an order or a judgment is entered that disposes of all of the substantive issues in the litigation, as to one or more parties, as a matter of law, the circuit court intended it to be the final document for purposes of appeal, notwithstanding the label it bears or subsequent actions taken by the circuit court.

*Harder v. Pfitzinger,* 2004 WI 102, ¶ 2, 274 Wis. 2d 324,

---

[5] Apparently, the circuit court contemplated the use of a form, but the court determined that form CR-263 was not appropriate to the case and could not be modified. Therefore, on December 1, 2000, the court contacted the parties indicating that the use of the form was not necessary.

682 N.W.2d 398. Therefore, when Schulpius failed to appeal timely from the November 2000 order, he waived his right to challenge the validity of that order. We also agree with the court of appeals' majority that *Morford* is inapplicable in this case for another reason related to waiver. *See Schulpius*, 270 Wis. 2d 427, ¶ 33 n.8. In the court of appeals, Schulpius did not challenge Judge Franke's determination that he was not suitable for supervised release; thus that issue is also waived. *See also Pub. Serv. Employees' Union v. Wisconsin Employment Relations Bd.*, 246 Wis. 190, 199, 16 N.W.2d 823 (1944) (Under the well-established rule, questions not argued will not be considered or decided) (citing *Fisher v. Herrmann*, 118 Wis. 424, 95 N.W. 392 (1903); *Kipp v. Laun*, 146 Wis. 591, 131 N.W. 418 (1911)).

■

¶ 27. Schulpius additionally asks this court to decide whether or not *Morford* should be applied retroactively. Because we conclude that Schulpius waived his *Morford* objection by his failure to appeal from the November 2000 order, and also because, when before the court of appeals, he failed to challenge Judge Franke's November 2000 determination that on November 29 he was not suitable for supervised release, we need not address the issue of retroactivity.[6]

---

[6] Schulpius urges this court to overrule its decision in *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 280 N.W.2d 757 (1979), and adopt the rule of *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) on the retroactive application of a new rule of law. We decline to do so here. However, even if this court were to adopt the rule of *Harper* on retroactivity, we do not believe it would impact on this case. *Harper* held that when the United States Supreme Court:

applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full

¶ 28. As noted previously, because Schulpius continues to be considered a sexually violent person and inappropriate for supervised release, the issues he has raised are moot. Nevertheless, we feel it is appropriate to address Schulpius's claims of constitutional and statutory violations for the reasons previously stated.

¶ 29. Schulpius maintains that his continued detention in spite of a court order for supervised release violates both the substantive and procedural due process guarantees of the United States and Wisconsin Constitutions.[7] Schulpius argues that his continued detention in secure custody, after numerous circuit court orders for supervised release, shocks the conscience. He claims that because the state failed to take reasonable steps to provide Schulpius with an appropriate supervised release placement, and did nothing about his confinement in a secure facility, his substantive due process rights were violated.

¶ 30. In addition, Schulpius argues that his continued detention violates procedural due process. Schulpius maintains that Wis. Stat. § 980.08(6m) cre-

retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* at 97. Because Schulpius failed to appeal the November, 2000 order within 90 days of entry of the order, as per Wis. Stat. § 808.04(1), Schulpius's case was not open on direct review at the time of this court's decision in Morford.

[7] Because "[w]e have determined that the due process clauses of Article I, § 1 of the Wisconsin Constitution and the Fourteenth Amendment to the United States Constitution are substantially equivalent," we generally interpret the state and federal constitutional provisions consistently with each other. *See In re Paternity of John R.B.*, 2005 WI 6, ¶ 18, 277 Wis. 2d 378, 690 N.W.2d 849 (footnotes omitted).

ates an expectation of supervised release. Therefore, once a court grants a petition for supervised release under Chapter 980, the committed individual has a clear legal entitlement to the preparation of a plan concerning treatment and services and a timely placement on supervised release, despite inadequate state or local resources. *Sprosty,* 227 Wis. 2d 316. Schulpius's position is that confining him in a secure facility for more than four years, when he was entitled to such relief, violated the procedures that were due him under Chapter 980. In other words, he contends Chapter 980 was unconstitutionally applied to him.

¶ 31. The State maintains that Schulpius has failed to establish either a substantive or a procedural due process violation. It is the State's position that Schulpius's substantive due process claim fails because denying a "least restrictive" placement is not contrary to society's understanding of ordered liberty. *Sacramento County v. Lewis,* 523 U.S. 833, 840 (1998). In *State v. Rachel,* 2002 WI 81, ¶ 66, 254 Wis. 2d 215, 647 N.W.2d 762, this court recognized that the discussion in *State v. Post,* 197 Wis. 2d 279, 313, 541 N.W.2d 115 (1995), regarding the "least restrictive environment" did not make supervised release indispensable to the constitutionality of Chapter 980. Rather, this court determined in *Rachel* that the statute is constitutional because confinement is directly linked to an individual's dangerousness. *Rachel,* 254 Wis. 2d 215, ¶¶ 65–66.

¶ 32. We have consistently held that civil commitment under Chapter 980 "constitutes a deprivation of liberty that is subject to due process protection." *Id.,* ¶ 61. We base this position on the well established tenet that "[f]reedom from physical restraint is a fundamen-

tal right protected by the due process clause from wrongful, arbitrary governmental action." *Id.* (citations omitted).

¶ 33. The due process clause of the United States Constitution creates a substantive protection from certain arbitrary, wrongful government actions. *Zinermon v. Burch,* 494 U.S. 113, 125 (1990). The test to determine if the state conduct complained of violates substantive due process is if the conduct " 'shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.' " *State v. Joseph E.G.,* 2001 WI App 29, ¶ 13, 240 Wis. 2d 481, 623 N.W.2d 137. In addition, when analyzing a substantive due process violation claim, we also consider "whether the government officer's conduct was either a 'deliberate decision[]' to 'deprive' Schulpius of his liberty interest, or reflected the officer's 'deliberate indifference' to that liberty interest. . . ." *Schulpius,* 270 Wis. 2d 427, ¶ 37 (quoting *Lewis,* 523 U.S. at 849–50).

¶ 34. We agree with the court of appeals that there is nothing in the evidentiary record that would lead us to conclude that the failure to place Schulpius on supervised release, as ordered by the circuit court, "was the result of anything but good-faith efforts that did not succeed because of things beyond the control of those to whom the court orders were directed. . . ." *Id.,* ¶ 38.

¶ 35. We are satisfied that the DHFS made substantial attempts to ensure that Schulpius would be placed on supervised release. It followed court orders to draw up placement plans and contact other counties in search of an appropriate facility. The fact that the DHFS's efforts were ultimately unsuccessful cannot be characterized as either an intentional or conscious

disregard of Schulpius's constitutional rights. When one considers "Schulpius's horrendous history of predatory sexual violence against children," the DHFS's inability to find an appropriate community placement for Schulpius clearly falls short of the level of a substantive due process violation. *Id.,* ¶ 40.[8]

¶ 36. We conclude that the failure to place Schulpius on supervised release, during the period between the initial supervised release determination and the circuit court's ultimate determination that Schulpius was too dangerous for such placement, does not shock the conscience. Therefore, Schulpius endured no substantive due process violation.

¶ 37. The State further maintains that Schulpius's procedural due process rights were not violated, as he was provided all the required procedures under Chapter 980. The fact that Schulpius did not receive supervised release is not the result of any procedural failing, according to the State, as all the procedural safeguards in Chapter 980 were rigorously applied in this case.

¶ 38. We disagree with the State and with the court of appeals that the state's failure to place Schulpius on supervised release after being so ordered by the circuit court did not constitute a procedural failing. In determining the nature and extent of the process due, we balance the private interest that will be affected, the government's interest, and "the risk of an erroneous deprivation of those interests through the

---

[8] Furthermore, we note that the United States Supreme Court has twice upheld the constitutionality of a civil commitment scheme for sexually violent individuals that did not include a provision for supervised release. *Kansas v. Crane,* 534 U.S. 407 (2002); *Kansas v. Hendricks,* 521 U.S. 346 (1997).

procedures used." *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976). Although the state has a compelling interest in protecting the public from sexually violent persons,[9] the private interests at stake, freedom from physical restraint,[10] is equally critical. The risk of erroneous deprivation of an individual's liberty is unacceptably heightened by the state's failure to abide by procedures established to ensure the preservation of fundamental rights.

¶ 39. We therefore conclude that Schulpius's continued placement in secure confinement for an extended period after the circuit court had repeatedly ordered he be placed on supervised release, violated his right to procedural due process. However, release, either outright or supervised, is not an appropriate remedy for Schulpius at this time, where his substantive due process rights were not violated, but where there was a violation of procedural due process. As we explained in *State ex rel. Marberry v. Macht:*

> Release of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for the patient. Accordingly, release is not only inappropriate, it is not justifiable under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient.

*State ex rel. Marberry v. Macht,* 2003 WI 79, ¶ 30, 262 Wis. 2d 720, 665 N.W.2d 155 (internal citations and quotation marks omitted).

---

[9] *State v. Post,* 197 Wis. 2d 279, 330, 541 N.W.2d 115 (1995).

[10] *See State v. Rachel,* 2002 WI 81, ¶ 61, 254 Wis. 2d 215, 647 N.W.2d 762 (citing *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992)).

¶ 40. We agree with the court of appeals that outright release would certainly not appear to be an appropriate remedy for a violation of the procedural due process rights of an individual committed under Chapter 980 who has been deemed sexually violent and inappropriate for even supervised release. As the court of appeals noted in regard to Schulpius:

> [A]ny judicial decision that puts the community at risk because of what agents of government may have done or not done must balance the "potential injury" to society's interests against the "potential benefits" that would flow from any rule designed to deter future conduct by those agents, even where . . . those agents might have violated rules designed to protect constitutional rights.

*Schulpius,* 270 Wis. 2d 427, ¶ 42 (citing *United States v. Calandra,* 414 U.S. 338, 348–49 (1974)). *See also State v. Beyer,* 2006 WI 2, ¶ 50, 287 Wis. 2d. 1, 707 N.W.2d 509, ("Discharge is not an appropriate remedy for a sexually violent person who is dangerous because he or she suffers from a mental disorder that makes it likely that he or she will engage in acts of sexual violence.").

## IV

¶ 41. We turn next to the second principal issue on appeal. Should this court, in light of this court's decision in *Sprosty,* issue an order directing the DHFS to create an appropriate residential facility or dwelling in Milwaukee County for persons presently authorized for supervised release?

¶ 42. In *Sprosty,* this court determined that a circuit court has the authority under Wis. Stat. § 980.08(5) to order the DHFS to create appropriate services and

facilities to accommodate an order for supervised release, and that the DHFS has the financial burden of paying for such programs and facilities in accord with Wis. Stat. § 980.12.[11] *Sprosty,* 227 Wis. 2d 316 at 320, 336–37. In *Sprosty,* this court stated that "a circuit court has the authority under Wis. Stat. § 980.08(5) to order a county, through DHFS, to create whatever programs or facilities are necessary to accommodate an order for supervised release." *Id.* at 331. That language is not inconsistent with our holding here, as it is the county's responsibility to work with the DHFS to prepare a plan that identifies treatment and services that an individual on supervised release will receive in the community. *See* Wis. Stat. § 980.08(5).

¶ 43. We conclude that the *Sprosty* decision is still valid, and enables a circuit court to fashion a remedy in

---

[11] The current version of Wis. Stat. § 980.08(5) states, in relevant part:

> If the court finds that the person is appropriate for supervised release, the court shall notify the department. The department shall make its best effort to arrange for placement of the person in a residential facility or dwelling that is in the person's county of residence, as determined by the department under s. 980.105. The department and the county department under s. 51.42 in the county of residence of the person shall prepare a plan that identifies the treatment and services, if any, that the person will receive in the community. The plan shall address the person's need, if any, for supervision, counseling, medication, community support services, residential services, vocational services, and alcohol or other drug abuse treatment.

Wis. Stat. § 980.08(5)(2003–04).

The current version of Wis. Stat. § 980.12 provides, in relevant part: "Except as provided in ss. 980.03(4) and 980.08(3), the department shall pay from the appropriations under s. 20.435(2)(a) and (bm) for all costs relating to the evaluation, treatment and care of persons evaluated or committed under this chapter." Wis. Stat. § 980.12(1) (2003–04).

an appropriate situation. However, we determine that issuing such an order is inappropriate at this time, under these circumstances. Such a facility for supervised release would be meaningless for Schulpius at this time, as he was determined to be inappropriate for supervised release in November 2000, and that determination has not been changed. In addition, we are satisfied that the DHFS has made substantial attempts to establish a residential facility or dwelling that would enable individuals committed under Chapter 980, such as Schulpius, to be placed on supervised release in Milwaukee County.

¶ 44. As we stated in our order of November 9, 2004, in this case, "the repeated failure of the DHFS to place Chapter 980 committees on supervised release in Milwaukee County when so ordered raises serious constitutional and rule of law issues. . . ." However, we find encouragement in the efforts undertaken by the DHFS to resolve this issue and, hopefully, prevent it from recurring.

¶ 45. The record includes examples of the DHFS attempting to address and correct the problem of placing individuals deemed appropriate for supervised release in appropriate community facilities. As we noted earlier, the DHFS's efforts have included the preparation of placement plans in conjunction with Milwaukee County, the search for appropriate facilities, and work with the Wisconsin Legislature and the committee established by it, to emphasize the very real need for a transitional facility in Southern Wisconsin for Chapter 980 supervised release. At oral argument, counsel for the DHFS indicated that the DHFS is continuing to seek both a site for a transitional facility in Milwaukee County, as well as engaging in ongoing efforts to find individual residential placements for individuals the

court has identified as appropriate for supervised release.

¶ 46. The Wisconsin Legislature has also taken positive steps toward finding a solution. In 2003, the legislature passed Wisconsin Act 187, which concerned Milwaukee County and established a committee "to make recommendations regarding the location of a facility for the treatment of sexual predators." 2003 Wis. Act 187. The Sexually Violent Persons Transitional Facility Siting Advisory Committee (Committee) met weekly from October 19, 2004, until May 24, 2005, pursuing its mandate to locate a minimum of three locations in Milwaukee County for consideration by the state for the housing of individuals committed under Chapter 980 deemed appropriate for supervised release. Although the Committee was ultimately unable to fulfill its mandate, the Committee did report to the legislature with suggestions that it hoped would greatly enhance the possibilities of finding suitable locations within Milwaukee County.[12]

¶ 47. The report of the Committee was submitted to the legislature, as well as to the DHFS and the Department of Corrections, on July 12, 2005. The Committee chair noted:

> As a committee, we anguished over the fact that we could not meet our charge, yet we also understood the difficult charge that we were given. As stated in the beginning of this report, we do believe that locations to house sexually violent offenders under supervision within Milwaukee County can be found; however, unless an attempt is made to address the barriers faced by the committee, it is not likely that locations to house

---

[12] *See Sexually Violent Persons Transitional Facility Siting Advisory Committee, Final Report,* July 12, 2005. Available at http://dhfs.wisconsin.gov/aboutDHFS/svp/.

sexually violent offenders placed on supervision will ever be found within Milwaukee county.[13]

It is certainly appropriate to give the State of Wisconsin the opportunity to act on the Committee report. Based on that report, there is a reasonable expectation that the legislature will take further action to address the barriers the Committee identified, in regard to the location of an appropriate site or sites for a residential facility or dwelling in Milwaukee County.

¶ 48. It is significant that the State Building Commission appropriated approximately $1.3 million toward the establishment of a residential facility or dwelling, in order to place individuals committed under Chapter 980 on supervised release in Milwaukee County. Counsel for the DHFS stated at oral argument that, if necessary, the DHFS will request more money in support of this project.

¶ 49. We conclude that, under an appropriate set of facts, a court may order the DHFS to create a residential facility or dwelling necessary to accommodate an order for supervised release, but for the reasons set forth, Schulpius's case is not an appropriate one for a *Sprosty*-type court order at this time.

## V

¶ 50. Finally, we address the issue of whether Schulpius or another individual committed under

---

[13] *Sexually Violent Persons Transitional Facility Siting Advisory Committee, Final Report,* July 12, 2005. Available at http://dhfs.wisconsin.gov/aboutDHFS/svp/. The Committee identified four barriers to completing its charge: (1) lack of public support; (2) lack of political support; (3) lack of resources; and (4) the vagueness of 2003 Wisconsin Act 187.

Chapter 980, who is authorized for supervised release but not yet expeditiously placed, is entitled to seek a remedy such as monetary damages.

¶ 51. The Wisconsin Legislature made no provision for such a remedy in Chapter 980 for a violation of the statutory scheme. Because the November 2000 order denying supervised release remains valid, we decline to address what remedy, if any, Schulpius is entitled to seek. Further, we decline to address the issue of whether under different circumstances, another individual committed under Chapter 980, authorized for supervised release but not yet expeditiously placed, would be entitled to seek a remedy such as monetary damages.[14]

## VI

¶ 52. In sum, we conclude that the November 2000 order granting the State's motion for reconsideration, and finding Schulpius not appropriate for supervised release, was a valid, final, appealable order, and therefore, he is not entitled to outright release from his

---

[14] We note that the United States Supreme Court has limited the remedy available for a denial of procedural due process to "nominal damages without proof of actual injury." *Carey v. Piphus,* 435 U.S. 247, 266 (1978). In *Farrar v. Hobby,* the Court explained:

> The awarding of nominal damages for the 'absolute' right to procedural due process 'recognizes the importance to organized society that [this] righ[t] be scrupulously observed' while 'remain-[ing] true to the principle that substantial damages should be awarded only to compensate actual injury.' Thus, *Carey* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury.

*Farrar v. Hobby,* 506 U.S. 103, 112 (1992) (quoting *Carey,* 435 U.S. at 266).

Chapter 980 commitment. Even though Schulpius's appeal is moot, we determine that the issues should be considered. We determine that *Morford* is inapplicable to this case, as Schulpius never appealed, and therefore waived any objection to, the order granting the State's Wis. Stat. § 806.07(1)(h) motion to reconsider supervised release. We do conclude, however, that there was a procedural due process violation. We also conclude that the *Sprosty* decision is still valid, and allows a circuit court to order the DHFS to create an appropriate residential facility or dwelling to accommodate a Chapter 980 order for supervised release. However, for two reasons, we conclude that issuing such an order is unnecessary in this case. Such a residential facility or dwelling for supervised release would be meaningless for Schulpius at this time, as he was determined to be inappropriate for supervised release in November 2000 and that determination has not been changed. Second, we are satisfied that the DHFS has made substantial attempts to establish a residential facility or dwelling that would enable individuals committed under Chapter 980 to be placed on supervised release in Milwaukee County. Finally, because the order of November 2000 declaring Schulpius inappropriate for supervised release remains valid, even though there was a procedural due process violation, we decline to address what remedy, if any, Schulpius would be entitled to seek. We further decline to address what might be an appropriate remedy for another individual, committed under Chapter 980 who, under different circumstances, has been authorized for supervised release, but not yet expeditiously placed.

 *By the Court*—The decision of the court of appeals is affirmed.