KESSLER, P.J.[1]
¶1 T.L.R. appeals from an order of commitment to inpatient treatment at a Milwaukee County behavioral health facility. He argues that the circuit court's commitment violated his rights to procedural and substantive due process. We affirm.
BACKGROUND
¶2 On December 19, 2017, Milwaukee police officers filed a "Statement of Emergency Detention by Law Enforcement Officer," stating that they had cause to believe that T.L.R. was mentally ill and could cause physical harm to himself or others. According to the detention statement, Milwaukee police detained T.L.R. after an employee of a downtown Milwaukee hotel flagged down two officers to report a man behind the hotel with a cardboard box that was on fire. The officers approached the man, later identified as T.L.R., and put out the fire. According to the detention statement, T.L.R. appeared "delusional," telling the officers that he was a "yoga master" and a "gypsy" and asking the officers if they "want to get shot and killed." T.L.R. also told the officers that he "can build fires because we are located in the 'north.' " A supplemental report, provided by the "Treatment Director, or his or her designee" at the Milwaukee County Mental Health Division, alleged that T.L.R. posed a threat of danger to himself or others and stated a diagnosis of psychosis-nonspecific.
¶3 On December 28, 2017, Milwaukee County filed a Notice of Final Hearing and Commitment Rights. The notice stated the date of T.L.R.'s final commitment hearing, attached both the original and supplemental detention statements, and notified T.L.R. that he could only be committed if he met one of the forms of behavior specified in WIS. STAT. §§ 51.20(1)(a)2.
¶4 Dr. Suraj Singh, a psychiatrist at the Milwaukee County Behavioral Health Division, testified at a probable cause hearing. Dr. Singh testified that he began treatment of T.L.R. after T.L.R.'s emergency detention. Dr. Singh testified based upon his review of T.L.R.'s medical records and his evaluation of T.L.R., that T.L.R. was likely developing schizophrenia. He testified that T.L.R. "presented with poor self care, poor communication, periods responding to internal stimuli, periods of agitation, poor insight, poor judgment," and was "expressing some delusional thoughts like we're out to kill him or shoot him, or that the State is going to hold him forever. He's been masturbating in public places openly in the unit[.]" Dr. Singh testified that T.L.R. was not taking his necessary medication or engaging in any treatment plans and was in need of inpatient therapy. Dr. Singh stated that T.L.R.'s discharge into the community "won't be safe" because T.L.R. was "extremely delusional, paranoid, agitated at times. It's likely going to end up in some event that ... shouldn't happen."
¶5 The matter proceeded to a final hearing where multiple witnesses testified. Kasey Rose, an employee at a downtown Milwaukee hotel, testified that on December 19, 2017, he witnessed T.L.R. in an alley behind the hotel sitting in front of a cardboard box that was on fire. Rose stated that the fire was contained, but that the fire was close to a dumpster that had other boxes capable of catching fire. Rose did not engage T.L.R., but instead went back into the hotel to get a pitcher of water to put out the fire. He also asked his manager to flag down two Milwaukee police officers who were already inside the building.
¶6 Milwaukee Police Officer Kory Fons testified that he was at a downtown Milwaukee hotel on business when an employee called his attention to a man in the alley behind the hotel. Fons observed T.L.R. holding two cardboard boxes that were on fire near a dumpster. Fons put the fire out with a pitcher of water and engaged T.L.R. T.L.R. told Fons that he started the fire because he was "clearing room to make an instrument." T.L.R. also asked Fons and his partner "if we wanted to get shot or killed." T.L.R. did not have a firearm on him, but Fons stated that he was worried about T.L.R. making a threat and starting a fire behind an occupied hotel and next to "a [d]umpster full of cardboard and flammable material."
¶7 Dr. Charles Rainey, a forensic psychiatrist, testified that he evaluated T.L.R. a few days before the final hearing. Dr. Rainey said that after evaluating T.L.R., reviewing T.L.R.'s medical chart and consulting with others on T.L.R.'s treatment team, he concluded that T.L.R. suffers from a treatable mental illness. Specifically, Dr. Rainey stated that T.L.R. suffers from "either just schizophrenia or it may be schizoaffective disorder, which would add a mood component to the schizophrenia." Dr. Rainey stated that T.L.R. was a proper subject for treatment, exhibiting delusions, "prosecutorial trends, and grandiosity and significant disorganization." Dr. Rainey stated that T.L.R. was prescribed multiple medications, but that T.L.R. "isn't reliable-he doesn't believe that he needs the medications. He doesn't understand what they're doing for him and I couldn't really hold a conversation with him."
¶8 The circuit court ordered a six-month commitment of T.L.R., finding Dr. Rainey's testimony credible. The court also stated that upon reviewing the documents in T.L.R.'s file, it believed T.L.R. suffered from a treatable mental illness and was in need of inpatient treatment.
¶9 This appeal follows.
DISCUSSION
¶10 The County bore the burden of proving by clear and convincing evidence that T.L.R. required an involuntary mental health commitment. See WIS. STAT. § 51.20(13)(e). Specifically, the County was required to prove that T.L.R. was: (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous. See WIS. STAT. § 51.20(1)(a). On appeal, T.L.R. asserts that his procedural and substantive due process rights were violated because he was denied notice of the standard of dangerousness used to commit him and because the circuit court failed to find, and the County failed to prove, that T.L.R. met any of the WIS. STAT. § 51.20(1)(a)2. dangerousness standards.
¶11 The County asserts that T.L.R.'s appeal is moot because his commitment order expired and he is no longer in County custody. T.L.R. argues that the appeal is not moot for various reasons, among them, the prohibition on his possession of a firearm. The prohibition on firearm possession apparently has not been lifted. Accordingly, T.L.R.'s appeal from the commitment order is not moot. See State ex rel. Olson v. Litscher , 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425 ("An issue is moot when its resolution will have no practical effect on the underlying controversy.").
¶12 Where, as here, a claim of error was not contemporaneously raised in the circuit court, it is subject to the plain error standard of being fundamental, obvious, and substantial. See State v. Jorgensen , 2008 WI 60, ¶1, 310 Wis. 2d 138, 754 N.W.2d 77 ; WIS. STAT. § 901.03(4).
A. Procedural Due Process
¶13 A procedural due process analysis involves a two-part inquiry, asking first " 'whether there exists a liberty or property interest which has been interfered with by the [County],' " and if so, " 'whether the procedures attendant upon that deprivation were constitutionally sufficient.' " See State v. Stenklyft , 2005 WI 71, ¶64, 281 Wis. 2d 484, 697 N.W.2d 769 (citation omitted). The Wisconsin Supreme Court has explained:
The nature and extent of the process due depends on the nature of the case and is influenced by the grievousness of the loss that may be suffered. In determining the process due, a reviewing court balances the private interests involved, the government interests involved, and the risk of an erroneous deprivation of those interests through the procedures used.
State v. Beyer , 2006 WI 2, ¶20 and nn.26-27, 287 Wis. 2d 1, 707 N.W.2d 509 (footnotes omitted).
¶14 T.L.R. argues that his procedural due process rights were violated because he was not given notice of the specific standard of dangerousness used to commit him. We disagree.
¶15 There are five standards under which the County may meet its burden to prove dangerousness. See WIS. STAT. § 51.20(1)(a) 2.a.-e.[2] T.L.R. was served with an emergency detention packet which had the statement of detention and the supplemental statement of detention. The statements indicated that T.L.R. presented a danger to himself and others and described T.L.R.'s dangerous behavior. The supplemental statement listed the statutory standards under which the circuit court could find T.L.R. dangerous. The packet also included the names of the witnesses and the basis of their testimony. The notice clearly set forth the basis of T.L.R.'s detention. WISCONSIN STAT. § 51.20(1)(a)2. does not indicate that a person subject to commitment must be notified of each specific standard. T.L.R. was given appropriate notice of the standards of dangerousness. Accordingly, his procedural due process rights were not violated.
B. Substantive Due Process
¶16 A substantive due process analysis considers whether state action is arbitrary to the extent that it "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." State v. Schulpius , 2006 WI 1, ¶33, 287 Wis. 2d 44, 707 N.W.2d 495 (citation and quotation marks omitted). Where there is a fundamental liberty interest at stake, substantive due process requires a statute or administrative rule to be narrowly tailored to achieve a compelling state interest. Monroe Cty. DHS v. Kelli B. , 2004 WI 48, ¶¶17, 19, 271 Wis. 2d 51, 678 N.W.2d 831.
¶17 The United States Supreme Court has held that a person's liberty interest against an involuntary civil commitment can be substantively protected with proof by clear and convincing evidence that the commitment is for the protection of the subject or others. Addington v. Texas , 441 U.S. 418, 430-33 (1979).
¶18 T.L.R. contends that his substantive due process rights were violated because the County failed to prove, and the circuit court failed to find, that T.L.R. met any of the statutory standards of dangerousness. We disagree.
¶19 In a WIS. STAT. ch. 51 proceeding, a petitioner (here, the County) must prove by clear and convincing evidence that a subject individual is mentally ill, is a proper subject for treatment, and is dangerous. See WIS. STAT . §§ 51.20(1)(a), (13)(e). Review of a ch. 51 order presents a mixed question of fact and law. The circuit court's findings of fact shall not be disturbed unless they are clearly erroneous. Winnebago Cty. v. Christopher S. , 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109, cert. denied , 136 S. Ct. 2464 (2016). Interpretation and application of the facts to the statutory standards presents a question of law that is reviewed independently. Id.
¶20 Both parties acknowledge that the circuit court made limited factual findings. However, the circuit court stated that it considered the relevant testimony and the reports in T.L.R.'s records prior to finding T.L.R. dangerous. We are not convinced that the statute requires the circuit court to articulate a specific dangerousness standard from among those listed in the statute.
¶21 The record supports the circuit court's finding that T.L.R. was dangerous based on his conduct both before and after he was detained. T.L.R. was initially detained by Milwaukee police after he was found holding a cardboard box, which was on fire, near a dumpster containing flammable material outside of an occupied hotel. T.L.R. made delusional and threatening statements to the officers. Two psychiatrists evaluated T.L.R. They testified that T.L.R. was schizophrenic, delusional, and unable to understand his need for medications. Both doctors opined that discharging T.L.R. into the community could pose a risk to both T.L.R. and to others. An evaluation report prepared by Dr. Rainey also stated that T.L.R. posed a danger to himself and others and that T.L.R. did not understand the need for treatment. Dr. Rainey opined in the report that T.L.R. "will decompensate" unless committed for inpatient treatment. We conclude that the record provides clear and convincing evidence that T.L.R. was mentally ill, was a proper subject for treatment, and was a danger to others. The County met its burden of proof. T.L.R.'s substantive due process rights were not violated. We affirm.
By the Court. -Order affirmed.
This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Wisconsin Stat. § 51.20(1)(a)2. states:
The individual is dangerous because he or she does any of the following:
a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.
b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm....
c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals....
d. Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness....
e. For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions....