## COURT OF APPEALS
## DECISION
## DATED AND FILED

### October 22, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2209-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF3501

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFF JETER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DANIEL L. KONKOL and DAVID C. SWANSON, Judges. *Affirmed.*

Before Brash, P.J., Kessler and Dugan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Jeff Jeter appeals from a judgment of conviction for one count of conspiracy to knowingly deliver heroin (more than fifty grams), contrary to WIS. STAT. § 961.41(1)(d)4. and (1x) (2015-16).[1]   Jeter also appeals from an order denying his postconviction motion, which alleged ineffective assistance of two successive attorneys with respect to Jeter's potential testimony at the trial of his co-actor.   Jeter argues that he is entitled to resentencing because of that alleged ineffective assistance.   We affirm.

## BACKGROUND

¶2      The background facts are undisputed.   The State filed a criminal complaint alleging that seven individuals were involved in heroin trafficking in Milwaukee.   Jeter was charged with the aforementioned crime and agreed to plead guilty in exchange for the State's agreement "to leave all sentencing up to the [c]ourt's discretion."   The State told the trial court at the plea hearing that another component of the plea agreement was that Jeter would "provide complete, accurate and truthful testimony at the jury trial of his co-actors."

¶3      On January 28, 2016, the trial court accepted Jeter's guilty plea and found him guilty.[2]   The matter was scheduled for sentencing on March 11, 2016.

¶4      On February 15, 2016, the jury trial began for Willie Ford, the man who the State alleged was the leader of the heroin distribution ring.   Jeter was expected to testify for the State at that trial, which was held in another branch of

---

[1]   All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]   The Honorable Daniel L. Konkol accepted Jeter's plea and sentenced him.

the circuit court. However, on February 17, 2016, Jeter's trial counsel filed a motion to withdraw and told the State that Jeter would not be testifying at Ford's trial. The trial continued without Jeter's testimony, and on Friday, February 19, 2016, Ford was found guilty of delivery of heroin but acquitted of another crime.

¶5 That same day, February 19, 2016, the trial court heard trial counsel's motion to withdraw. Trial counsel told the trial court:

> Your Honor, I filed this motion the other day, February 17th, my motion to withdraw. We had last been in court here January 28th [when Jeter pled guilty]. Part of the plea had to do with Mr. Jeter testifying against Willie Ford. I went to meet with Mr. Jeter this week on February 16th, [and] discussed his testimony for the trial which would have been this week.
>
> Mr. Jeter asked for another attorney. He is not satisfied at this point with the representation[,] with his understanding of the plea deal and some other issues and asked for another attorney.
>
> I did bring this motion in the hopes that perhaps another attorney could be appointed to see if Mr. Jeter still wanted to testify but that was unable to be done so we're here this afternoon on my motion to withdraw as Mr. Jeter's attorney.

The trial court then asked Jeter if he wanted a different attorney, and Jeter replied that he did. The trial court allowed trial counsel to withdraw. Another attorney was appointed to represent Jeter (hereafter referred to as "sentencing counsel").

¶6 At sentencing, the prosecutor told the trial court that because Jeter "opted not to testify" at Ford's trial, the State was not bound by the plea agreement. Nonetheless, the State did not recommend a specific sentence to the trial court, leaving the length of the sentence to the trial court's discretion, as originally promised pursuant to the plea agreement.

3

¶7     The defense provided a sentencing memorandum for the trial court that was written by an investigator.  The memorandum briefly addressed Jeter's cooperation with the police and commented on the fact that Jeter did not testify at Ford's trial, stating:  "When [Jeter] was eventually caught and arrested, he cooperated with the authorities[,] giving a full statement.  [Jeter] was also willing to testify against Mr. Ford, but something was lost in the communication between [Jeter] and his first attorney."

¶8     In her sentencing comments, the prosecutor disagreed with that assertion in the memorandum, telling the trial court:

> I don't agree with the information contained in the private sentencing memorandum that it was due to a misunderstanding between him and his attorney.
>
> His attorney … told us that the defendant changed his mind and didn't wish to testify so I don't think that that's a confusion.  I think that that was his conscious decision to not follow through with the agreement that he had bargained for.

¶9     When sentencing counsel offered his sentencing recommendation, he explained why Jeter chose not to testify, stating:

> So it turns out that when the time came for the trial of Mr. Ford, my client whose life had been threatened at one point during his dealings with Mr. Ford and the lives of his family chose not to testify and basically it was from fear and the reason for that being that Mr. Ford with his background and so forth was quite an evil person in the community and was dangerous and was fully capable and my client was afraid of either being killed himself or arranging his death in jail or prison or going after his family members who themselves were afraid of Mr. Ford and what he could do, so that explains why he did not testify.

Sentencing counsel urged the trial court not to penalize Jeter for his decision not to testify.  He encouraged the trial court to give Jeter "some credit for the

cooperation he gave to the police" and for his acceptance of responsibility "in the early stages of his case."

¶10 When Jeter addressed the trial court, he did not mention anything related to the plea agreement or the fact that he did not testify at Ford's trial.

¶11 When the trial court pronounced sentence, it noted that Jeter had the opportunity to testify against Ford "and he chose not to exercise that opportunity." The trial court added: "He's not being punished for it but, my goodness, I can't reward him like I can with other people who get rewarded for deciding to testify. That would make no sense." The trial court ultimately sentenced Jeter to seventeen years of initial confinement and eight years of extended supervision.

¶12 Represented by postconviction counsel, Jeter filed a motion seeking resentencing. He argued that trial counsel and sentencing counsel both provided ineffective assistance. *See **Strickland v. Washington***, 466 U.S. 668, 687 (1984) (holding that to prove a claim of ineffective assistance of counsel, a defendant must show that his lawyer performed deficiently and that this deficient performance prejudiced him). First, Jeter alleged that trial counsel performed deficiently by "misrepresenting to the prosecutor that [Jeter] would not testify against the co[-]actors." Jeter denied that he ever told trial counsel that he would not testify. Further, he claimed that the trial court imposed a longer sentence than it would have otherwise imposed because it was told that Jeter refused to testify against Ford.

¶13 Second, Jeter alleged that sentencing counsel performed deficiently by failing to tell the trial court or the State that Jeter was willing to testify, and by not correcting the prosecutor's assertion at the sentencing hearing that Jeter had been unwilling to testify against Ford. Jeter claimed that as a result of sentencing

5

counsel's ineffectiveness, the trial court did not have accurate sentencing information on which to base Jeter's sentence.

¶14 The trial court held a ***Machner*** hearing where trial counsel, sentencing counsel, and Jeter testified.[3] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). The key factual disputes were whether Jeter told trial counsel that he would not testify at Ford's trial and whether sentencing counsel should have told the trial court that Jeter was willing to testify.

¶15 The trial court found that trial counsel was more credible than Jeter and accepted trial counsel's version of the events.[4] The trial court said that trial counsel could not be faulted where "Jeter, at some point, decided he actually wasn't willing to complete one of the terms of the plea agreement which was to testify" against his co-actors. The trial court concluded that trial counsel had not performed deficiently.

¶16 The trial court also found that sentencing counsel had not performed deficiently. The trial court said that based on its finding that Jeter had decided not to testify at Ford's trial, there was no need for sentencing counsel to correct the prosecutor's statements at the sentencing hearing concerning Jeter's failure to testify. The trial court also said that it accepted sentencing counsel's "strategic decision" not to "highlight the fact that [Jeter] did not testify at the Ford trial."

---

[3] The Honorable David C. Swanson presided over the motion hearing and denied Jeter's motion.

[4] The trial court said that parts of Jeter's testimony were "not credible" and "just not believable."

6

¶17    Having concluded that neither attorney provided deficient representation, the trial court said that it would not address the prejudice prong of the *Strickland* ineffective assistance test.  *See id.*, 466 U.S. at 697 (holding that there is no reason for a court evaluating an ineffective assistance claim to address both deficient performance and prejudice if the defendant does not make a sufficient showing on either one).  This appeal follows.

## DISCUSSION

¶18    On appeal, Jeter continues to argue that he was denied the effective assistance of trial counsel and sentencing counsel.  The standard of review presents a mixed question of law and fact.  *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990).  "[T]he trial court's findings of fact, 'the underlying findings of what happened,' will not be overturned unless clearly erroneous."  *Id.* (citations omitted).  In addition, we do not disturb the postconviction court's credibility determinations.  *See State v. Turner*, 114 Wis. 2d 544, 550, 339 N.W.2d 134 (Ct. App. 1983) (stating that, "[w]hen required to make a finding of fact, the [postconviction] court determines the credibility of the witnesses and the weight to be given to their testimony and its determination will not be disturbed by this court on appeal where more than one inference may be drawn from the evidence").  "The ultimate determination of whether counsel's performance was deficient and prejudicial to the defense are questions of law which this court reviews independently."  *Johnson*, 153 Wis. 2d at 128.  With those legal standards in mind, we turn to the performance of each attorney.

**A. Trial counsel's performance.**

¶19    On appeal, Jeter argues that his trial counsel performed deficiently by "ineffectively communicating materially erroneous information to successor

counsel, and, thereby allowing such erroneous information to be presented at sentencing." (Underlining and uppercasing omitted.) The State correctly points out that Jeter is presenting a different argument than he raised at the trial court, where he argued that trial counsel performed deficiently by "misrepresenting to the prosecutor that [Jeter] would not testify against the co[-]actors." The State urges this court to decline to address the issue because it is raised for the first time on appeal and to deem Jeter's original argument abandoned. *See State v. Schulpius*, 2006 WI 1, ¶26, 287 Wis. 2d 44, 707 N.W.2d 495 (holding that this court generally does not review an issue raised for the first time on appeal); *Reiman Assocs., Inc. v. R/A Advert., Inc.*, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (holding that issues not briefed are deemed abandoned).

¶20 In response, Jeter argues that he did not waive the issue and urges this court to consider his arguments, given that the relevant facts were developed at the evidentiary hearing. Because the same crucial factual finding underlies both of Jeter's allegations concerning trial counsel, we will address both arguments.

¶21 The trial court found, contrary to Jeter's testimony, that Jeter told his trial counsel he was not willing to testify against Ford. This finding is not clearly erroneous. *See Johnson*, 153 Wis. 2d at 127. Trial counsel testified that when he met with Jeter on February 16, 2016, Jeter said "[t]hat he was having second thoughts about" testifying against Ford and "that he was having concerns about [trial counsel's] representation as well." Trial counsel said that after they talked for awhile, "it ended with, [']no, I do not want to – I do not want you to represent me, and I do not want to testify.[']" Trial counsel's testimony supports the trial court's finding, which we will not disturb. *See id.* The fact that trial counsel immediately filed a motion to withdraw because he hoped a new attorney would change Jeter's mind about testifying does not change our conclusion.

¶22    Given the trial court's finding that Jeter told trial counsel that he was unwilling to testify against Ford, it follows that trial counsel did not provide "materially erroneous information" to either the prosecutor or successor counsel when he told them that Jeter said he would not testify at Ford's trial. Accordingly, Jeter has not shown that trial counsel performed deficiently.

**B. Sentencing counsel's performance.**

¶23    Jeter argues that sentencing counsel acted deficiently by "failing to provide the trial court with the information that [Jeter] had been willing to testify against codefendant Ford." (Underlining and some uppercasing omitted.) Once again, Jeter's argument is premised on his assertion that he was willing to testify against Ford. The trial court rejected that assertion, finding that Jeter had decided not to testify. As we concluded above, that finding is not clearly erroneous.

¶24    Jeter also claims that sentencing counsel should not have told the trial court that Jeter was afraid to testify against Ford. The trial court implicitly accepted sentencing counsel's testimony that Jeter "made very clear to [sentencing counsel] that he was very afraid of Mr. Ford and so was his family." This finding is not clearly erroneous, as it was supported by sentencing counsel's testimony.

¶25    Finally, we are not persuaded that sentencing counsel performed deficiently by telling the trial court that Jeter had been afraid to testify and also filing a sentencing memorandum that contained Jeter's "official position" that there was a miscommunication with trial counsel concerning his desire to testify. The record supports the trial court's finding that sentencing counsel made a "strategic decision" not to discuss at length the reasons Jeter did not testify against

Ford and instead emphasize the positive facts that Jeter gave helpful information to the police and accepted responsibility early in the case.[5] "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." *State v. Elm*, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996).

¶26     In conclusion, we are not persuaded that trial counsel and sentencing counsel performed deficiently. Therefore, we will not address Jeter's arguments concerning the prejudice prong of the test for ineffective assistance of counsel. *See Strickland*, 466 U.S. at 697. We agree with the trial court that Jeter was not entitled to relief.

    *By the Court.*—Judgment and order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Sentencing counsel testified that he made a "strategic decision" not to emphasize the fact that Jeter did not testify at Ford's trial because counsel "could see no positives in stressing to the judge that my client had … failed to testify."