287 Wis.2d 1 (2006)
2006 WI 2
707 N.W.2d 509
IN RE the COMMITMENT OF Deryl B. BEYER:
STATE of Wisconsin, Petitioner-Respondent,
v.
Deryl B. BEYER, Respondent-Appellant.
No. 2004AP1208.
Supreme Court of Wisconsin.
Oral argument October 11, 2005.
Decided January 10, 2006.
For the respondent-appellant there were briefs and oral argument by Donald T. Lang, assistant state public defender.
For the petitioner-respondent the cause was argued by Eileen Pray, assistant attorney general, with whom on the brief was Peggy A. Lautenschlager, attorney general.
*5 ¶ 1. SHIRLEY S. ABRAHAMSON, C.J.
This is an appeal from an order of the circuit court for Green County, Daniel L. LaRocque, Reserve Judge, denying Deryl B. Beyer's pro se motion for release from commitment as a sexually violent person under chapter 980 of the statutes.[1] The court of appeals certified the case to *6 this court pursuant to Wis. Stat. § (Rule) 809.61 (2003-04).[2] We accepted the certification and affirm the order of the circuit court.
¶ 2. Two issues are presented: First, whether the due process guarantee of the Fourteenth Amendment of the United States Constitution[3] has been violated by a delay of over 22 months in the present case between the time the first annual periodic examination report on Beyer was submitted to the circuit court under Wis. Stat. § 980.07 and the circuit court's probable cause hearing under Wis. Stat. § 980.09(2)(a) to determine whether facts exist that warrant a hearing on whether Beyer is still a sexually violent person. We conclude that the delay in the present case violated due process.
¶ 3. Second, whether the remedy for this violation of due process is, under the circumstances of the present case, the release of Beyer from commitment as a sexually violent person. We conclude that the circuit court did not err in refusing to release Beyer from commitment as a sexually violent person.
¶ 4. Beyer argues before this court that the circuit court unreasonably delayed in appointing counsel to represent him at the probable cause hearing[4] and that this delay rendered it impossible for him to secure an independent evaluation promptly and to have prompt judicial review of his continued detention by means of a *7 probable cause hearing. Beyer contends that the delay effectively nullified his due process right to periodic judicial review of his civil commitment. The remedy he proposes for the alleged denial of due process is release from commitment as a sexually violent person.[5]
¶ 5. The State contends that Wis. Stat. § 980.09(2)(a) governing the probable cause hearing does not provide a time for holding the hearing, that this court should not read a time limit into the statute, and that the delay in holding the probable cause hearing in the present case does not constitute a due process violation.
¶ 6. After careful consideration of Wis. Stat. §§ 980.07(1) and 980.09(2)(a) and of the Due Process Clause of the Fourteenth Amendment, we hold that due process requires that a ch. 980 committee be granted a probable cause hearing within a meaningful time period after the Department of Health and Family Services (DHFS) provides a copy of the annual periodic examination report to the circuit court pursuant to § 980.07(2). We hold that, in this case, the delay in holding the probable cause hearing was unreasonably long and violated Beyer's due process right to periodic judicial review of his ch. 980 civil commitment within a meaningful time period.
¶ 7. Nevertheless, we disagree with Beyer's contention that he must be released from commitment as a sexually violent person. Beyer presently remains a sexually violent person. Release of a person who continues *8 to be sexually violent under Wis. Stat. § 980.01(7) contravenes the purposes of ch. 980 treatment of the committee's mental disorder and protection of the publicand is not required by the due process clause. The appropriate remedy for a ch. 980 committee when a circuit court fails to take prompt action to appoint counsel or an independent examiner and hold a probable cause hearing under Wis. Stat. § 980.09(2) is to move for a writ of mandamus or a supervisory writ to compel the circuit court to take immediate action. If counsel or an independent examiner delays the proceedings, a ch. 980 committee could move the circuit court for just and equitable relief such as an order to show cause why counsel or the independent examiner should not be discharged or why the independent examiner should not be ordered to conduct the examination promptly or provide the examination report to the circuit court immediately.
¶ 8. However, because a ch. 980 committee may encounter considerable obstacles to pursuing these remedies, the DHFS, the Department of Justice, the bar, and the circuit courts must bear substantial responsibility for ensuring prompt judicial review of ch. 980 annual periodic examination reports. We therefore recommend appropriate precautionary measures to ensure that the due process violation that occurred in the present case does not occur in the future.

I
¶ 9. We begin our analysis by discussing the statutory framework of the commitment of certain sexually violent offenders and the periodic annual examination of ch. 980 committees.
¶ 10. Chapter 980 provides procedures for involuntary commitment of individuals determined to be *9 "sexually violent persons."[6] When a felon convicted of certain sexually violent offenses[7] is to be released from prison, the Department of Justice or a local district attorney may petition the circuit court to commit that individual to a state institution.[8] Once a person is determined at trial to be a sexually violent person, the circuit court must commit the person to the custody of the DHFS for control, care, and treatment until it is determined that the person is no longer sexually violent.[9]
*10 ¶ 11. Once committed, an individual's primary procedural protections are established by Wis. Stat. §§ 980.07 and 980.09. Although these statutes do not explicitly set forth a step-by-step procedure for the annual periodic examination and judicial review, they provide a broad outline of the process.[10]
¶ 12. Wisconsin Stat. § 980.07(1) directs the DHFS to examine a committed person's mental condition within six months after the initial confinement and again thereafter at least once every 12 months.[11] Within 30 days of the examination, the DHFS examiner must prepare a written report and provide a copy of the report to the circuit court that committed the person.[12]
*11 ¶ 13. At the time of the annual periodic examination under Wis. Stat. § 980.07(1), the ch. 980 committee must be provided with, pursuant to § 980.09(2)(a), "a written notice of [his or her] right to petition the court for discharge over the secretary [of the DHFS's] objection."[13] This notice must also contain a "waiver of rights" giving the ch. 980 committee the option to decline to petition the circuit court for discharge.[14]
¶ 14. The DHFS must "forward the notice and waiver form to the court with the report of the department's examination under s. 980.07."[15] If the ch. 980 committee "does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person."[16] The statute does not state when this probable cause hearing must be held.
*12 ¶ 15. Although the ch. 980 committee does not have the right to be present at the probable cause hearing, he or she does have the right to have an attorney represent him or her at the hearing.[17] The court of appeals has held that the probable cause hearing may be a paper review[18] and that the ch. 980 committee may retain an independent expert to conduct an examination before the hearing and include the report in the record used to determine whether probable cause exists to hold a discharge hearing.[19]
¶ 16. The legislature thus has guaranteed a ch. 980 committee access to periodic judicial review in Wis. Stat. § 980.09(2) with counsel and an independent examiner. A ch. 980 committee automatically obtains a probable cause hearing after his or her annual periodic examination simply by not signing the waiver of rights form.

II
¶ 17. Having set forth the statutory procedure, we turn to the undisputed facts of this case, which are a complicated chronology of events relating to Beyer's first annual periodic examination in 2002. We set out the relevant undisputed facts as follows:

*13  November 18, 1999: Beyer was involuntarily committed to the care of the DHFS as a sexually violent person.[20]
 January 9, 2001: The DHFS tardily conducted Beyer's initial six-month examination.[21]
 February 20, 2002: Pursuant to Wis. Stat. § 980.07(1), the DHFS conducted the first annual periodic examination of Beyer. Beyer did not waive his right to petition for discharge.
 March 4, 2002: The DHFS provided a copy of the annual periodic examination report and the unsigned waiver of rights form to the circuit court, reporting that Beyer continued to be a sexually violent person.
 May 1, 2002: Beyer filed a pro se petition for a writ of habeas corpus with the circuit court in Green County based on the delay in conducting his first annual periodic examination.[22]
 June 6, 2002: The circuit court dismissed Beyer's habeas corpus petition on the ground that the venue was not proper.

*14  August 26, 2002: Beyer wrote the circuit court, reminding it that he had not signed the waiver form accompanying the first annual periodic examination report and requesting counsel and an independent examiner for a probable cause hearing.[23]
 September 9, 2002: Ten business days after Beyer's letter, the circuit court's judicial assistant forwarded Beyer's letter to Juan Colas, the assistant attorney general for Beyer's case, and to Beyer's habeas counsel.[24]
 Over six months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 September 23, 2002: Assistant Attorney General Colas responded to the circuit court, outlining the procedure for judicial review of an annual periodic examination report under Wis. Stat. § 980.09. Assistant Attorney General Colas's letter, *15 which was copied to the State Public Defender, suggested that the State Public Defender appoint counsel for Beyer and that the circuit court schedule a status conference within 30 days.
 October 23, 2002: With no counsel yet appointed to represent Beyer, the circuit court held a status conference with Assistant Attorney General Colas to discuss appointment of counsel.
 Over seven months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 November 26, 2002: Attorney Scott Anderson was appointed to represent Beyer.
 Almost nine months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 December 19, 2002: At a telephone status conference, it was decided that Dr. Lynn Maskel would be appointed to conduct an independent psychological evaluation. No written order appointing Dr. Maskel was issued.
 January 27, 2003: Beyer wrote the circuit court, alerting it that Attorney Anderson had not yet communicated with him.
 Almost 11 months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 February 15, 2003: Beyer was given his second annual periodic examination. Beyer again did not waive his right to petition for discharge.

*16  March 1, 2003: With the judicial review of Beyer's first annual periodic examination report still pending, the DHFS provided the report of the second annual periodic examination to the circuit court.
 Almost one year had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 March 28, 2003: Beyer filed a motion to dismiss counsel because Attorney Anderson had not yet communicated with him.
 Almost 13 months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 Almost one month had elapsed since the DHFS provided the circuit court with Beyer's second annual periodic examination report and unsigned waiver form.
 April 9, 2003: The circuit court granted Beyer's motion for a new attorney at a telephone conference and appointed Attorney Roger Merry as successor counsel.
 Over 13 months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 Over one month had elapsed since the DHFS provided the circuit court with Beyer's second annual periodic examination report and unsigned waiver form.

*17  April 29, 2003: The circuit court entered a written order appointing Dr. Maskel as the independent psychological evaluator, finally implementing the December 19, 2002 appointment.
 Almost 14 months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 Almost two months had elapsed since the DHFS provided the circuit court with Beyer's second annual periodic examination report and unsigned waiver form.
 May 12, 2003: Beyer filed the pro se motion that eventually resulted in this appeal, seeking release from commitment as a sexually violent person.
 May 27, 2003: The circuit court denied Beyer's pro se motion.
 August 5, 2003: The circuit court held another telephone status conference. Attorney Merry complained on Beyer's behalf that Dr. Maskel had yet to file a report on Beyer's condition, despite the fact that over three months had passed since her appointment. The circuit court appointed a replacement independent examiner, Dr. Ralph Underwager. Unfortunately, Dr. Underwager passed away before filing a report. His colleague, Hollida Wakefield, took over Beyer's examination.
 Over 18 months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.

*18  Over five months had elapsed since the DHFS provided the circuit court with Beyer's second annual periodic examination report and unsigned waiver form.
 January 6, 2004: Ms. Wakefield filed a report based both on her own and Dr. Underwager's examinations, opining that there was a substantial probability that Beyer would re-offend sexually.
 January 9, 2004: The circuit court held a telephone probable cause hearing and determined that there was not probable cause warranting a hearing on whether Beyer was still a sexually violent person.
 Twenty-two months had elapsed since the DHFS provided the circuit court with Beyer's first annual periodic examination report and unsigned waiver form.
 Ten months had elapsed since the DHFS provided the circuit court with Beyer's second annual periodic examination report and unsigned waiver form.

III
¶ 18. The issue presented is whether the Due Process guarantee of the Fourteenth Amendment of the United States Constitution was violated in the present case by a delay of over 22 months between the time the first annual periodic examination report on Beyer was provided to the circuit court under Wis. Stat. § 980.07 and the circuit court's probable cause hearing under Wis. Stat. § 980.09(2)(a) to determine whether *19 facts exist that warrant a hearing on whether Beyer is still a sexually violent person. We hold that the delay in the present case violated the due process guarantee.
¶ 19. Whether the process provided by the circuit court satisfies due process is a question of constitutional law. This court determines questions of constitutional law independently of the circuit court, but benefiting from its analysis.[25]
¶ 20. The nature and extent of the process due depends on the nature of the case and is influenced by the grievousness of the loss that may be suffered.[26] In determining the process due, a reviewing court balances the private interests involved, the government interests involved, and the risk of an erroneous deprivation of those interests through the procedures used.[27]
*20 ¶ 21. Civil commitment under ch. 980 "constitutes a deprivation of liberty that is subject to due process protection."[28] The private interests at stake in civil commitment proceedings are similar to those at stake in criminal proceedings.[29] "Freedom from physical restraint is a fundamental right protected by the due process clause from wrongful, arbitrary governmental action."[30] Commitment to an institution even for a short duration works a unique deprivation of liberty and may have "long lasting effects on the *21 individual's ability to function in the outside world due to the stigma attached to mental illness."[31]
¶ 22. Wisconsin has a compelling interest in protecting the public from dangerous, sexually violent persons.[32] However, the State also has an interest in excluding from treatment individuals who are not, or are no longer, sexually violent. "Commitment ends when the committed person no longer suffers from a mental disorder or when that condition no longer predisposes him to commit acts of sexual violence."[33] Thus the State and the ch. 980 committee share a fundamental interest in fair and effective processes that allow for periodic review of a ch. 980 commitment to avoid the erroneous deprivation of liberty interests. *22 "Untimely periodic reexamination frustrates the treatment objective and may keep persons who are no longer a danger to the public in institutionalized care longer than necessary."[34]
¶ 23. The constitutional right at stake in the instant case is the right to be heard for a determination of whether the ch. 980 committee is no longer mentally disordered and dangerous and should be free from institutional confinement.[35]
¶ 24. The constitutionality of Beyer's continued ch. 980 commitment depends on sufficient judicial oversight so that if Beyer is no longer mentally disordered or dangerous, he can seek release to the community or discharge from commitment.[36] Periodic review provides assurance that the nature and duration of commitment are, as due process demands, reasonably related to its purpose. Periodic review not only prevents the unnecessary confinement of individuals who are no *23 longer dangerous, it promotes the efficient use of treatment resources by applying those resources to those persons who actually continue to pose a risk to the public and require such treatment.
¶ 25. The essence of due process in continued civil commitment is "`the opportunity to be heard at a meaningful time and in a meaningful manner.'"[37] Due process and its promise of fundamental fairness require that judicial review be provided at a meaningful time to avoid indefinite detention caused by delay of review hearings.[38] By providing ch. 980 committees with annual periodic examinations and judicial review, ch. 980 "offers ample and fair opportunity for review and petition for release."[39]
¶ 26. In light of the fundamental nature of a ch. 980 committee's liberty interest and the State's interest in holding a ch. 980 committee only for so long as he or *24 she requires treatment, the due process requirement that the ch. 980 committee be heard at a "meaningful time" demands that the circuit court hold the probable cause hearing promptly and within a reasonable time after the DHFS provides the circuit court with a ch. 980 committee's annual periodic examination report and unsigned waiver form.
¶ 27. The State concedes that delay in judicial review of a person's commitment may be so unreasonable as to constitute a due process violation.
¶ 28. We must therefore address what limits due process places on the time for appointing counsel and appointing an independent examiner, two steps ordinarily needed for the probable cause hearing under Wis. Stat. § 980.09(2)(a).
¶ 29. Wisconsin Stat. § 980.09(2)(a) provides no timelines for appointment of counsel, for appointment of an independent examiner, or for holding a probable cause hearing. Section 980.07 provides some timelines; it requires that a periodic examination be conducted at least once each 12 months, and that an examiner prepare a written report of the examination no later than 30 days after the date of the examination and provide it to the circuit court.
¶ 30. In determining a reasonable time for a probable cause hearing in the context of Wis. Stat. § 980.09(2), we must be mindful of the circumstances of each case. "`[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."[40]
*25 ¶ 31. In determining a reasonable time for a probable cause hearing we must read Wis. Stat. § 980.09(2) in conjunction with the statutory requirement in § 980.07(1) of an annual review process. By guaranteeing annual periodic examinations and judicial review absent a ch. 980 committee's affirmative waiver thereof, the statutes assure that a circuit court will expeditiously review the continued validity of a ch. 980 commitment. As the court of appeals observed in its certification, "Logic therefore suggests that the [probable cause] proceeding must promptly follow [the annual periodic examination] to avoid defeating the purpose of the reexamination process, as well as the committed person's due process rights."
¶ 32. Twenty-two months elapsed between March 4, 2002, when the DHFS provided a copy of the annual periodic examination report and the unsigned waiver of rights form to the circuit court (reporting that Beyer continued to be a sexually violent person) and Beyer's probable cause hearing on January 9, 2004. It is clear that the circuit court did not act promptly to appoint counsel or an independent examiner, two steps ordinarily preceding a probable cause hearing, or to hold a probable cause hearing.
¶ 33. We agree with the State that the circuit court and the DHFS were not responsible for the entire 22-month delay. Certainly, the State could not foresee and was largely helpless to prevent the inaction of Beyer's first appointed attorney and the first appointed independent examiner and the unexpected death of the second appointed independent examiner.
*26 ¶ 34. However, when we review the facts, it is clear that at a minimum the State was responsible for almost nine months of delay, and likely was responsible for at least 13 months of delay. The DHFS provided the circuit court with the annual report and Beyer's unsigned waiver on March 4, 2002. The circuit court took its first action toward a probable cause hearing on September 9, 2002, when it forwarded Beyer's request for an attorney to Beyer's habeas attorney and to the assistant attorney general. Then, the circuit court waited until November 26, 2002, to appoint an attorney. In other words, the circuit court did not begin the process by which Beyer's annual periodic examination report would be reviewed until over six months after it received the first annual periodic examination report and did not appoint an attorney for Beyer, an essential step in the process, until almost nine months had elapsed after it received the first annual periodic examination report. In State v. Thayer, 2001 WI App 51, 241 Wis. 2d 417, 626 N.W.2d 811, the court of appeals declared that "counsel must simply be appointed [for an indigent ch. 980 committee] as soon as possible."[41]
¶ 35. The circuit court also apparently caused delay by failing to appoint an independent examiner promptly. At the December 19, 2002 hearing, Attorney Anderson, in the only action he took on behalf of Beyer, requested appointment of an independent examiner. The circuit court noted at that hearing that Dr. Maskel would be appointed. However, no order appointing Dr. Maskel issued until April 29, 2003. Thus, four additional months *27 of delay passed before Beyer obtained an independent examination. No progress could be made until the examination occurred, because counsel must evaluate the record after an independent examiner conducts a reevaluation of the ch. 980 committee before a probable cause hearing.[42]
¶ 36. A delay of almost nine months before appointing counsel and beginning the process by which judicial review can be had cannot be said to be reasonable. This delay does not permit the ch. 980 committee to be heard at a meaningful time and offends notions of fundamental fairness. An almost nine-month delay before appointing counsel renders it unlikely, if not impossible, that a discharge hearing could be held within one year. Implicit in the annual periodic examination process is that, even if judicial review of the examination report cannot always be completed within one year, the circuit court should ordinarily have at least taken the essential step of appointing counsel early within the one-year period.
¶ 37. We have now accounted for 13 months of the 22-month delay. The remaining nine months of the 22-month delay were not caused by the circuit court. Part of the nine months is inherent in the review process. For example, some time must be allotted for appointed counsel to talk with the client, to evaluate the matter, and for the independent examiner to schedule and conduct the independent examination.[43]
*28 ¶ 38. In this case, there was additional delay because Beyer's first appointed counsel never contacted Beyer, because his first independent examiner never conducted an examination, and because his second independent examiner met an untimely death.
¶ 39. Although neither the circuit court nor the State was responsible for these delays, neither was Beyer. Wisconsin Stat. § 980.09(2) requires little action by a ch. 980 committee who wishes to petition for discharge. The statute allows for automatic review of the annual periodic examination report. The statute appears to make the circuit court responsible for initiating and managing the judicial review of the annual periodic examination report after it is provided to the circuit court.
¶ 40. The circuit court, in its order dismissing Beyer's pro se motion, stated that Beyer failed to take necessary action to facilitate the assignment of counsel to his case after the circuit court clerk, in September 2002, informed Beyer that he should contact the State Public Defender.[44] There is no evidence in the record, however, that Beyer's alleged inaction caused any significant delay. Because Beyer's alleged failure to communicate *29 with the State Public Defender occurred sometime in September 2002, Beyer's inaction could not have contributed to seven months of the troublesome ninemonth delay before the circuit court appointed counsel on November 26, 2002.
¶ 41. Wisconsin Stat. § 980.09(2) guarantees a ch. 980 committee counsel for his probable cause hearing. Thus, the court has a burden to make certain that the ch. 980 committee is able to retain his own counsel or to appoint counsel for the ch. 980 committee. Because Wis. Stat. § 980.09(2) puts the procedural onus on the State, not the ch. 980 committee, the circuit court should have taken responsibility for appointment of counsel much earlier in the review process.
¶ 42. In its decision dismissing Beyer's pro se motion for discharge, the circuit court pointed to the fact that on May 1, 2002, Beyer filed a motion for a writ of habeas corpus and the circuit court then appointed an attorney to assist him with that petition.[45] The circuit court, it appears, was suggesting either that it believed Beyer already to be represented by counsel for the purpose of his probable cause hearing or that Beyer's habeas corpus action tolled the circuit court's obligation to act promptly upon the probable cause hearing.
¶ 43. Even if the circuit court were correct in these assertions, the habeas proceeding would have excused just over one month of the nearly nine-month delay in appointing counsel for Beyer's probable cause hearing. Beyer filed his petition for habeas corpus on May 1, 2002, two months after the DHFS provided the *30 circuit court with the first annual periodic examination report and unsigned waiver form. The circuit court dismissed his habeas motion on June 6, 2002, over five months before it appointed counsel and 10 months before it appointed an independent examiner. Thus, even if we were to accept that the habeas proceeding tolled the requirement in Wis. Stat. § 980.09(2) to hold a probable cause hearing, over seven months of delay before appointing counsel is left completely unaccounted for.
¶ 44. The circuit court failed to explain why it did not act on the unsigned waiver form in the two months before Beyer filed his habeas motion or why it did not act for five months after dismissing Beyer's habeas motion. Further, the habeas motion does not in any way explain the four-month delay in appointing the first independent examiner.
¶ 45. Further, the circuit court's apparent beliefs that the habeas proceeding tolled the requirement that it appoint counsel for Beyer for the probable cause hearing and that Beyer's appointed habeas counsel was also his counsel for the probable cause hearing were unfounded. Beyer's habeas counsel, Attorney Bates, was appointed for that proceeding only, and there is no evidence in the record that Attorney Bates performed work for Beyer outside the bounds of his appointment. Nor has the circuit court or the State cited any case in which filing a habeas petition tolled the State's obligation to initiate the review process by appointing counsel after a ch. 980 committee does not waive his right to judicial review of an annual periodic examination report.
¶ 46. To summarize: No reason appears on the record to justify the delay in the circuit court's appointment of counsel. The circuit court was responsible for a delay that meant the probable cause hearing could not have been held until nine to 13 months after the DHFS *31 provided the circuit court with Beyer's first annual periodic examination report. This delay significantly weakened the protection of the annual periodic examination and Beyer's right to be heard at a meaningful time. Indeed, in the present case, Beyer was permitted but a single probable cause hearing on both his first and second annual periodic examination reports.
¶ 47. Regardless of whether the 13 months of delay were caused by the DHFS, the circuit court, the circuit court judge's assistant, the attorney general's office, Beyer's attorney, or some combination of them, the delay was unreasonably long because it deprived Beyer of his due process right to be heard at a meaningful time.

IV
¶ 48. Having established that Beyer's due process rights were violated by the untimely judicial review, we must now consider the remedy. Beyer contends that because his right to due process was violated, he is entitled to discharge.
¶ 49. The reports of both the DHFS examiner and the independent examiner concluded that Beyer continued to be a sexually violent person who was too dangerous to discharge from ch. 980 commitment. At the tardy probable cause hearing, the circuit court agreed with the examiners.
¶ 50. Discharge is not an appropriate remedy for a sexually violent person who is dangerous because he or she suffers from a mental disorder that makes it likely that he or she will engage in acts of sexual violence.[46]
*32 ¶ 51. In State ex rel. Marberry v. Macht, 2003 WI 79, 262 Wis. 2d 720, 665 N.W.2d 155, a ch. 980 committee who had been found by the DHFS and the circuit court to be a sexually violent person petitioned for a writ of habeas corpus based on the failure of the DHFS to conduct an initial evaluation within the six-month timeframe as required by Wis. Stat. § 980.07(1).[47] With one justice not participating and the justices divided on certain issues, the justices were nevertheless unanimous that release was not appropriate for an individual deemed dangerous under ch. 980. The lead opinion, written by Justice Sykes and joined by Justice Wilcox and Justice Crooks, explained the problem with releasing a sexually violent person as follows:
Release of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for the patient. Accordingly, release is not only inappropriate, it is not justifiable under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient. Mandamus and contempt are more appropriate to the purposes of the statute . . . .[48]
¶ 52. Justice Bradley, in an opinion that Justice Bablitch and I joined, agreed that releasing Marberry was not an appropriate remedy:
I understand and share the reticence of Justice Sykes' lead opinion for the remedy of release. Marberry continues to suffer from a mental illness which makes it *33 substantially probable that he will engage in acts of sexual violence if not continued in institutional care. Release at this time would unduly endanger the public.[49]
¶ 53. When a ch. 980 committee continues to be a sexually violent person, the cost to the public of releasing him into society would simply be too high and would be contrary to ch. 980's treatment objective. Thus, we conclude that discharge is inappropriate in this case.
¶ 54. When a circuit court fails to act promptly after the DHFS provides it with a ch. 980 committee's annual periodic examination report and unsigned waiver form, the appropriate remedies are similar to those set forth in Marberry. In Marberry, the lead opinion concluded that when the delay was caused by the DHFS's failure to provide a periodic examination in a timely manner, the aggrieved ch. 980 committee should move for "a writ of mandamus to compel an initial or periodic reexamination, backed up by contempt, with a fine or jail as a sanction."[50] In the present case, when the circuit court failed to take prompt action to appoint counsel and an independent examiner and hold a probable cause hearing under Wis. Stat. § 980.09(2), Beyer should have moved for a writ of mandamus or a supervisory writ to compel the circuit court to take immediate action. These remedies help ensure that a ch. 980 committee receives the process due to him while protecting the public from the discharge of dangerous persons and promoting effective treatment of sexually violent persons.
¶ 55. We do not, however, place the entire onus of protecting a ch. 980 committee's due process rights on *34 the committee. In Marberry, Justice Bradley, joined by two other justices, urged that a ch. 980 committee not bear the full responsibility for pursuing the above-enumerated remedies:
Perhaps most problematic, however, is that the lead opinion's remedies are misdirected. Rather than put the onus of ensuring compliance with the law on a mentally ill, institutionalized patient, I would put it where it belongs: on the Department of Health and Family Services [].[51]
¶ 56. The State has an interest in treating only those ch. 980 committees who remain sexually violent persons and an obligation to protect the due process rights of all its people. To this end, the institutional bodies of the State responsible for enforcement of ch. 980the DHFS, the Department of Justice, and the circuit courtsshould ensure prompt annual judicial review of ch. 980 committees' continued detention.
¶ 57. These entities can implement procedures that guarantee a ch. 980 committee's due process rights at the critical stages, namely the annual periodic examination, the appointment of counsel, the appointment of *35 an independent examiner, the probable cause hearing, and, if probable cause is found, the hearing on the issue of whether the ch. 980 committee is still a sexually violent person.
¶ 58. The DHFS can assist the circuit court in efficient case management by diligently adhering to the procedures and time limits set forth in ch. 980. As the agency charged with the custody, care, and control of ch. 980 committees, the DHFS plays an essential role in the annual periodic examination process.
¶ 59. A circuit court must take appropriate steps to institute case management techniques by which the circuit court is advised of the critical steps in reviewing an annual periodic evaluation report, that is, the appointment of an attorney and independent examiner and the holding of a probable cause hearing. Case management is essential to the efficient functioning of judicial review of commitments. We refrain from setting out a specific procedure circuit courts must follow to implement a "tickler" and follow-up system that prompts the circuit court to assure that the matter is proceeding promptly. We leave the implementation of the case management system to circuit courts and administrative staff. The circuit courts should not, however, rely on communication from the ch. 980 committee to keep the probable cause hearing process moving along promptly. This case demonstrates the problems that occur when no "tickler" and follow-up system is in place or when any such system fails and the circuit court neglects to hold a probable cause hearing at a meaningful time in violation of the due process rights of a ch. 980 committee.
¶ 60. The State Public Defender's office must promptly appoint counsel, and counsel must exercise his or her responsibilities diligently.
*36 ¶ 61. We commend the Attorney General's office for sending what it calls a "Paulick letter"[52] to circuit courts in some ch. 980 periodic review proceedings. According to the State's description at oral argument, the Attorney General's office frequently sends a letter to a circuit court reminding it of the need to conduct a probable cause hearing. The so-called "Paulick letter" would be helpful in every case to keep the judicial review process timely and to prevent due process violations.[53]
¶ 62. The onus is on the DHFS, the Department of Justice, the bar, and the circuit courts to act promptly on an annual periodic examination report and unsigned waiver form.

* * * *
¶ 63. After careful consideration of Wis. Stat. §§ 980.07(1) and 980.09(2)(a) and of the Due Process Clause of the Fourteenth Amendment, we hold that due process requires that a ch. 980 committee be granted a probable cause hearing within a meaningful time after the DHFS provides a copy of the annual periodic examination report of the ch. 980 committee to the circuit court pursuant to § 980.07(2). We hold that, in *37 this case, the delay in holding the probable cause hearing was unreasonably long and violated Beyer's due process right to be heard at a meaningful time.
¶ 64. Nevertheless, we disagree with Beyer's contention that he must be released from commitment as a sexually violent person. Beyer presently remains a sexually violent person. Release of a person who continues to be sexually violent under Wis. Stat. § 980.01(7) contravenes the purposes of ch. 980 treatment of the committee's mental disorder and protection of the publicand is not required by the due process clause. The appropriate remedy for a ch. 980 committee when a circuit court fails to take prompt action to appoint counsel or an independent examiner and hold a probable cause hearing under Wis. Stat. § 980.09(2) is to move for a writ of mandamus or a supervisory writ to compel the circuit court to take immediate action. If counsel or an independent examiner delays the proceedings, a ch. 980 committee could move the circuit court for just and equitable relief such as an order to show cause why counsel or the independent examiner should not be discharged or why the independent examiner should not be ordered to conduct the examination promptly or provide the examination report to the circuit court immediately.
¶ 65. However, because a ch. 980 committee may encounter considerable obstacles to pursuing these remedies, the DHFS, the Department of Justice, the bar, and the circuit courts must bear substantial responsibility for ensuring prompt judicial review of the annual periodic examination reports.
¶ 66. We therefore recommend appropriate precautionary measures to ensure that the due process violations that occurred in the present case do not occur in the future.
*38 By the Court.The order of the circuit court is affirmed.
¶ 67. DAVID T. PROSSER, JR., J., took no part.
¶ 68. PATIENCE DRAKE ROGGENSACK, J. (concurring).
I concur in the majority opinion's conclusion that Deryl B. Beyer did not receive a timely Wis. Stat. § 980.09(2)(a) probable cause hearing. Majority op., ¶ 2. I also concur in the majority opinion's conclusion of what is an appropriate remedy. Majority op., ¶ 3. I write separately because under the facts of this case Beyer has not made a sufficient showing of state action that prejudiced him at the probable cause hearing. Therefore, I conclude his right to due process of law was not violated by the interval between the filing of the report of his annual periodic examination and the probable cause hearing conducted pursuant to § 980.09(2)(a).

I. BACKGROUND
¶ 69. Beyer claims that because there was a 22-month interval between the filing of his first annual periodic examination and the probable cause hearing available under Wis. Stat. § 980.09(2)(a), his right to due process was violated. The majority opinion agrees with this contention. Majority op., ¶ 2.
¶ 70. The 22-month interval had many causes. The undisputed facts show that on February 20, 2002, Beyer's first annual periodic examination was conducted. On March 4, 2002, the Department of Health and Family Services timely filed the report and a form showing that Beyer had not waived his right to a probable cause hearing. On August 26, 2002, Beyer requested a probable cause hearing, which request the court forwarded to Beyer's last counsel of record on *39 September 9, 2002. On September 23, 2002, the assistant attorney general wrote suggesting that the State Public Defender appoint counsel for Beyer for the probable cause hearing. On October 23, 2002, the court held a status conference to determine how best to move the matter along. On November 26, 2002, the court appointed an attorney to represent Beyer. On December 19, 2002, counsel and the court agreed that Dr. Lynn Maskel would be contacted to do an independent psychological evaluation.
¶ 71. On January 16, 2003, Beyer wrote the circuit court to complain that his attorney had not contacted him. The clerk forwarded the letter to counsel that the court had appointed on November 26. On March 28, 2003, Beyer moved to dismiss his attorney and for the appointment of another attorney. The court held a phone conference on Beyer's motion on April 3, 2003. On April 9, 2003, the circuit court granted Beyer's request for a new attorney and appointed Attorney Roger Merry to represent Beyer in the future.
¶ 72. On August 5, 2003, the circuit court held another telephone status conference. At that conference, Attorney Merry complained that Dr. Maskel had yet to file a report on Beyer's behalf, despite his repeated contacts of her. That same day the circuit court appointed Dr. Ralph Underwager as a replacement independent psychological examiner. Dr. Underwager began work on Beyer's behalf, but he died before he could file a report. Upon learning of Dr. Underwager's death, the court promptly appointed Dr. Hollida Wakefield, a colleague of Dr. Underwager, to complete an independent review of Beyer's mental condition.
¶ 73. On February 25, 2003, Dr. Pierquet completed Beyer's second annual evaluation. She concluded he remained sexually dangerous. On January 6, 2004, *40 Dr. Wakefield filed her report in which she concluded that there was a substantial probability that Beyer would re-offend. On January 9, 2004, the circuit court conducted a telephonic probable cause hearing and determined that there was not probable cause to warrant a hearing on whether Beyer continued to be a sexually violent person.

II. DISCUSSION
¶ 74. Wisconsin Stat. § 980.09(2)(a) provides that a ch. 980 committee may petition the court for discharge from custody or supervision. It also provides that if the committee has not waived the right to petition, the court is to set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still sexually violent. Section 980.09(2)(a) contains no time limit for holding a probable cause hearing. Therefore, the State has an obligation to hold a hearing within a reasonable time. See Barker v. Wingo, 407 U.S. 514, 530 (1972).

A. Standard of Review
¶ 75. Whether a violation of due process has occurred is a question of law that we review independently. State v. Aufderhaar, 2005 WI 108, ¶ 10, 283 Wis. 2d 336, 700 N.W.2d 4.

B. Due Process
¶ 76. The majority opinion relies on the Fourteenth Amendment of the United States Constitution to conclude that Beyer has sustained a due process violation due to unreasonable delay in holding the probable cause hearing. Majority op., ¶ 6. The Fourteenth *41 Amendment provides in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . ." (emphasis added). Accordingly, a due process violation can occur only as a result of state action or inaction when there is a duty to act. See State v. Jadowski, 2004 WI 68, ¶ 42, 272 Wis. 2d 418, 680 N.W.2d 810.
¶ 77. We have held that in certain circumstances only an intentional delay by the State will violate a person's right to due process. State v. Montgomery, 148 Wis. 2d 593, 595, 436 N.W.2d 303 (1989) (concluding that "only an intentional delay by the State to avoid juvenile [court] jurisdiction constitutes a due-process violation"). We have also held that a due process violation may arise from "wrongful, arbitrary" actions of the government. State v. Rachel, 2002 WI 81, ¶ 61, 254 Wis. 2d 215, 647 N.W.2d 762. The United States Supreme Court has held that the test to be applied to the timeliness by which a state holds a hearing or trial is one of reasonableness under the circumstances the case at hand presents. Barker, 407 U.S. at 533.
¶ 78. Barker sets out four factors to consider when a claim is made that due process rights have been violated because of a delay in holding a hearing: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a hearing; and (4) prejudice caused the defendant by the delay. Id. at 530. As Barker explains, "none of the four factors identified [is] either a necessary or sufficient condition to the finding of a deprivation of the [due process right]." Id. at 533. Barker's four factors inform my analysis.
¶ 79. I agree with the majority opinion that a 22-month delay in holding a probable cause hearing is too long. However, that delay is only a triggering event that requires consideration of an asserted due process *42 violation. Id. at 530. Here, there has been no allegation that the delay was intended to deny Beyer a probable cause hearing, and state action did not cause most of the delay.
¶ 80. The majority opinion finds fault with the circuit court for what it characterizes as "not begin[ning] the process by which Beyer's annual periodic examination report would be reviewed until over six months after it received [it.]" Majority op., ¶ 34. However, Beyer did not request a probable cause hearing until five months later. Only 14 days after Beyer made his request, the court forwarded it to his last counsel of record and to the last counsel of record for the State. Fourteen days after that, the court determined that the public defender needed to appoint successor counsel for Beyer, and one month later the court held a status conference to see how preparations for the probable cause hearing were progressing. None of those time intervals was unreasonable.
¶ 81. Furthermore, all of the delays between the October 23, 2002 status conference and the telephonic probable cause hearing on January 9, 2004 were the result of events that do not constitute state action: an appointed attorney that did not proceed with diligence; an appointed expert that did not complete the required report; an appointed expert who died before his report could be filed.
¶ 82. And finally, the report that Beyer's expert filed on January 6, 2004 concluded that Beyer remained a sexually violent person who was substantially likely to re-offend, as had the State's initial periodic review that was filed March 4, 2002 and the State's second annual review, completed by Dr. Pierquet on February 25, 2003. Therefore, Beyer was not prejudiced by the delay in conducting a probable cause hearing.

*43 III. CONCLUSION
¶ 83. Because Beyer has not made a sufficient showing of state action that prejudiced him at the probable cause hearing, I conclude that his right to due process of law was not violated by the interval between the filing of the report of his annual periodic examination and the probable cause hearing conducted pursuant to Wis. Stat. § 980.09(2)(a). Therefore, I respectfully concur in the majority opinion.
¶ 84. I am authorized to state that Justice JON P. WILCOX joins this concurrence.
*44 
NOTES
[1] The State, Beyer, and the circuit court characterized Beyer's pro se motion as a motion to dismiss the ch. 980 proceedings. The effect of a motion to dismiss the ch. 980 proceedings would be to release Beyer, and we therefore view the motion as a motion for release from commitment.
[2] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise indicated.
[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."
[4] Wisconsin Stat. § 980.09(2)(a) provides that "[t]he committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing."
[5] Beyer further argues that the delay deprived him of equal protection of the law. Because we hold that the delay in this case violated Beyer's rights under the Due Process Clause of the Fourteenth Amendment, we need not reach the question of whether Beyer's rights under the Equal Protection Clause were also violated.
[6] Wisconsin Stat. § 980.01(7) defines a sexually violent person as

a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in acts of sexual violence.
[7] Wisconsin Stat. § 980.01(6) defines a sexually violent offense as follows:

(a) Any crime specified in s. 940.225 (1) or (2), 948.02 (1) or (2), 948.025, 948.06 or 948.07.
(b) Any crime specified in s. 940.01, 940.02, 940.05, 940.06, 940.19 (4) or (5), 940.195 (4) or (5), 940.30, 940.305, 940.31 or 943.10 that is determined, in a proceeding under s. 980.05 (3) (b), to have been sexually motivated.
(c) Any solicitation, conspiracy or attempt to commit a crime under par. (a) or (b).
[8] Wis. Stat. § 980.02.
[9] Wisconsin Stat. § 980.06 states:

If a court or jury determines that the person who is the subject of a petition under s. 980.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment until such time as the person is no longer a sexually violent person. A commitment order under this section shall specify that the person be placed in institutional care.
[10] State v. Thayer, 2001 WI App 51, ¶ 12, 241 Wis. 2d 417, 626 N.W.2d 811.
[11] Wisconsin Stat. § 980.07(1) provides as follows:

980.07 Periodic examination; report. (1) If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03 (4).
See State ex rel. Marberry v. Macht, 2003 WI 79, ¶ 15, 262 Wis. 2d 720, 665 N.W.2d 155 (Sykes, J., lead opinion) (holding that time limits in Wis. Stat. § 980.07(1) are mandatory).
[12] Wisconsin Stat. § 980.07(2) provides as follows:

Any examiner conducting an examination under this section shall prepare a written report of the examination no later than 30 days after the date of the examination. The examiner shall place a copy of the report in the person's medical records and shall provide a copy of the report to the court that committed the person under s. 980.06.
[13] Wisconsin Stat. § 980.09(2)(a) provides as follows:

(2) Petition without secretary's approval.
(a) A person may petition the committing court for discharge from custody or supervision without the secretary's approval. At the time of an examination under s. 980.07 (1), the secretary shall provide the committed person with a written notice of the person's right to petition the court for discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall forward the notice and waiver form to the court with the report of the department's examination under s. 980.07. If the person does not affirmatively waive the right to petition, the court shall set a probable cause hearing to determine whether facts exist that warrant a hearing on whether the person is still a sexually violent person. The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing.
[14] Wis. Stat. § 980.09(2)(a).
[15] Id.
[16] Id.
[17] Id.
[18] State v. Paulick, 213 Wis. 2d 432, 438-39, 570 N.W.2d 626 (Ct. App. 1997) (holding that probable cause hearing under Wis. Stat. § 980.09(2) was not intended to be an evidentiary hearing but rather a review of the paper record with argument allowed by counsel).
[19] Thayer, 241 Wis. 2d 417, ¶¶ 8-9 (holding, inter alia, that Wis. Stat. § 980.07(1) allows appointment of an independent examiner).
[20] See Wis. Stat. § 980.06. Beyer challenged the judgment committing him on procedural grounds. Judge LaRocque rejected this challenge, as did the court of appeals, State v. Beyer, 2001 WI App 167, 247 Wis. 2d 13, 633 N.W.2d 627, cert. denied, Beyer v. Wisconsin, 537 U.S. 1210 (2003).
[21] Wisconsin Stat. § 980.07(1) requires the DHFS to examine a ch. 980 committee within six months after an initial confinement. Beyer was not examined until more than one year after his initial confinement. On July 31, 2001, the circuit court denied Beyer's petition for discharge in connection with the delay in his "six-month" review. This decision is not part of present appeal.
[22] Beyer requested appointment of counsel for the habeas petition. On May 13, 2002, Judge LaRocque held a preliminary telephone hearing on Beyer's habeas petition, at which attorney R. Alan Bates, who had been appointed by the circuit court, represented Beyer.
[23] Beyer asked that the circuit court appoint counsel other than Attorney Bates, who represented him in his habeas petition, or Attorney Jack Hoag, another of Beyer's previous attorneys.
[24] According to the circuit court's order dismissing Beyer's motion for release, the circuit court's judicial assistant also contacted the office of the State Public Defender about appointing counsel for Beyer, but Beyer did not follow an instruction to contact that office. Beyer disputes this characterization and states that he was never permitted to present evidence on this issue to the circuit court.
[25] State v. Woods, 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984).
[26] Determining what process is due in any particular case begins with an analysis of the government function involved and the private interest affected by the governmental action. Wolff v. McDonnell, 418 U.S. 539, 560 (1974) (considering due process rights of prisoners at prison disciplinary proceedings); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (requiring hearings prior to parole revocation).
[27] A court balances the following factors:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substituted procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Mathews v. Eldridge, 424 U.S. 319, 334 (1976).
[28] State v. Rachel, 2002 WI 81, ¶ 61, 254 Wis. 2d 215, 647 N.W.2d 762.
[29] Lessard v. Schmidt, 349 F. Supp. 1078, 1085 (E.D. Wis. 1972), vacated on procedural grounds, 414 U.S. 473 (1974) (three-judge district court) (discussing the nature and history of civil commitment); see Rachel, 254 Wis. 2d 215, ¶ 45 (acknowledging that ch. 980 involves "an affirmative disability or restraint").

Indeed, the deprivation of liberty at stake may, according to the United States Supreme Court, be even more serious than criminal incarceration:
In many respects, confinement in a mental institution is even more intrusive than incarceration in a prison. Inmates of mental institutions, like prisoners, are deprived of unrestricted association with friends, family, and community; they must contend with locks, guards, and detailed regulation of their daily activities. In addition, a person who has been hospitalized involuntarily may to a significant extent lose the right enjoyed by others to withhold consent to medical treatment. . . . We should not presume that he lacks a compelling interest in having the decisions to commit him and to keep him institutionalized made carefully, and in a manner that preserves the maximum degree of personal autonomy. Jones v. United States, 463 U.S. 354, 384-86 (1983).
[30] Rachel, 254 Wis. 2d 215, ¶ 61 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).
[31] Lessard, 349 F. Supp. at 1091 (three-judge district court) (holding prior version of Wisconsin mental illness civil commitment statute constitutionally defective).
[32] State v. Post, 197 Wis. 2d 279, 330, 541 N.W.2d 115 (1995) ("[T]he state has a compelling interest in protecting the public from dangerous mentally disordered persons . . . ."); cf. Addington v. Texas, 441 U.S. 418, 426 (1979) ("The state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill.").
[33] Post, 197 Wis. 2d at 313-14 (holding that ch. 980 does not violate principles of equal protection); see State v. Rachel, 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762 (holding that limits on ch. 980 committees' right to seek supervised release do not render ch. 980 unconstitutional); State v. Carpenter, 197 Wis. 2d 252, 541 N.W.2d 105 (1995) (holding that ch. 980 is not a punitive statute and violates neither the ex post facto nor double jeopardy clauses of the Wisconsin and United States constitutions); cf. Addington, 441 U.S. at 426 ("[T]he State has no interest in confining individuals if they are not mentally ill or if they do not pose some danger to themselves or others.").
[34] Marberry, 262 Wis. 2d 720, ¶ 19 (Sykes, J., lead opinion) (emphasis added).
[35] Post, 197 Wis. 2d at 328.
[36] Seling v. Young, 531 U.S. 250, 265 (2001) ("Accordingly, due process requires that the conditions and duration of confinement under the Act bear some reasonable relation to the purpose for which persons are committed."); O'Connor v. Donaldson, 422 U.S. 563, 575 (1975) ("[E]ven if his involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed."); Jackson v. Indiana, 406 U.S. 715, 738 (1972) (due process requires that the nature and duration of commitment bear a reasonable relation to the purpose for which the individual is committed); Rachel, 254 Wis. 2d 215, ¶¶ 54-56 (holding that ch. 980 does not violate due process because ch. 980 committees have access to adequate procedures through which to seek judicial review); State ex rel. Watts v. Combined Cmty. Servs. Bd., 122 Wis. 2d 65, 362 N.W.2d 104 (1985) (concluding that periodic review is required in ch. 55 civil commitment proceedings).
[37] Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). See State ex rel. McMillian v. Dickey, 132 Wis. 2d 266, 285-86 392 N.W.2d 453 (Ct. App. 1986) (in context of probation revocation, "[d]ue process is satisfied when an opportunity is accorded to be heard in a court at a meaningful time and in a meaningful manner").
[38] See State v. Beyer, 2001 WI App 167, 247 Wis. 2d 13, 633 N.W.2d 627 (Beyer's appeal regarding delay in holding the probable cause hearing for his initial commitment); cf. State ex rel. Jones v. Div. of Hearings & Appeals, 195 Wis. 2d 669, 674, 536 N.W.2d 213 (Ct. App. 1995) ("Due process requires that Jones have a parole revocation hearing within a reasonable time . . . and prevents . . . indefinite detention . . . .").
[39] Post, 197 Wis. 2d at 326; cf. Watts, 122 Wis. 2d at 72 (holding that protective placement statute unconstitutionally deprived individuals "of an automatic periodic reexamination of the need for continued protective placement.").
[40] Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring) (internal quotation marks omitted); see also Mathews v. Eldridge, 424 U.S. 319, 334 (1976); Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 895 (1961).
[41] Thayer, 241 Wis. 2d 417, ¶ 32 (ch. 980 case).

It appears from the record that the circuit court never made an explicit determination regarding whether Beyer was eligible for court-appointed counsel. However, both parties and the circuit court assume he was eligible, as do we.
[42] See Thayer, 241 Wis. 2d 417, ¶¶ 8-9 (holding, inter alia, that Wis. Stat. § 980.07(1) allows a ch. 980 committee to retain an independent examiner).
[43] Under Wis. Stat. § 980.09(2), a ch. 980 committee has the burden of proving that there is probable cause that he is no longer sexually violent. Consequently, a ch. 980 committee's attorney must have specialized knowledge and may require significant time to prepare for the hearing. Thus it is particularly important that a circuit court act promptly to appoint counsel.
[44] Beyer denies that he was ever directed to contact the State Public Defender. However, "[f]indings of fact shall not be set aside unless clearly erroneous . . . ." Wis. Stat. § 805.17(2). We do not decide whether the circuit court's finding that Beyer failed to contact the public defender is clearly erroneous. While we note that Beyer contests this claim and that the factual bases for this finding appear not to have been litigated, a determination of whether this finding is clearly erroneous is not necessary to the outcome of this case.
[45] The habeas corpus petition was based on the delay of almost seven months in conducting Beyer's initial (six-month) periodic examination. That delay is not before us.
[46] State v. Schulpius, 2006 WI 1, ¶¶ 39-40, 287 Wis. 2d 44, 707 N.W.2d 495.
[47] Marberry, 262 Wis. 2d 720, ¶¶ 3-4. Although the present case addresses a motion for discharge, not a habeas corpus petition, the requested remedyreleaseis of course the same.
[48] Marberry, 262 Wis. 2d 720, ¶ 30 (Sykes, J., lead opinion) (internal citations and quotation marks omitted).
[49] Id., ¶ 36 (Bradley, J., concurring).
[50] Id., ¶ 27.
[51] Id., ¶ 37 (Bradley, J., concurring); cf. McMillian, 132 Wis. 2d at 282 ("According to the circuit court and the department, a petitioner in a certiorari action must not only properly file his action, but he must then additionally cajole and prod both the circuit court and the department to perform those actions already required of them by virtue of the filing of the action. We reject this attempt to shift the blame for delay in the proceedings from those who have failed to act in the manner required by law to one who has complied with all legal requirements."); Watts, 122 Wis. 2d at 78 (quoting Doe v. Gallinot, 657 F.2d 1017, 1023 (9th Cir. 1981)) ("`[T]heir protection is illusory when a large segment of the protected class cannot realistically be expected to set the proceedings into motion in the first place.'").
[52] In State v. Paulick, 213 Wis. 2d 432, 570 N.W.2d 626 (Ct. App. 1997), the court of appeals held that Wis. Stat. § 980.09(2) requires only a paper hearing to determine whether probable cause exists to hold a hearing on whether the ch. 980 committee is still a sexually violent person. In response to the Paulick decision, the Attorney General apparently is sending what it calls a Paulick letter.
[53] In the present case, Assistant Attorney General Colas sent such a letter to the circuit court, but did so more than seven months after Beyer's unsigned waiver form was filed, too late to avoid the violation of Beyer's due process rights.