COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP2154**

STATE OF WISCONSIN

Cir. Ct. No. 1995CF954690

IN COURT OF APPEALS
DISTRICT I

IN RE THE COMMITMENT OF SHAWN DAVIS SCHULPIUS:

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

SHAWN DAVIS SCHULPIUS,

      DEFENDANT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

      Before White, C.J., Geenen, and Gill, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Shawn Davis Schulpius appeals from an order of the circuit court denying his petition for discharge from his WIS. STAT. ch. 980 (2019-20)[1] commitment.   Schulpius argues that the circuit court erroneously excluded one of his treatment providers from testifying at his discharge trial regarding the "incidents and opinions set forth by her in the Treatment Progress Notes[.]"  We assume without deciding that the circuit court erroneously excluded the treatment provider's testimony.  Nonetheless and for the following reasons, we conclude that any error in excluding the treatment provider's testimony was harmless.  Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶2    In December 1991, one week before his 18th birthday, Schulpius was convicted of first-degree sexual assault of a four-year-old boy for whom he had been babysitting.  *State v. Schulpius*, 2006 WI 1, ¶4, 287 Wis. 2d 44, 707 N.W.2d 495.  He was sentenced as an adult to an indeterminate term of not more than five years in the Wisconsin prison system.  *Id.*   The assault occurred approximately two months before Schulpius's 18th birthday.  *Id.*  At the time of his conviction, Schulpius already had a long history of sexually assaulting minors, and in 1995, just prior to Schulpius's release from prison, the State filed a petition requesting that Schulpius be committed as a sexually violent person under WIS. STAT. ch. 980.  *Schulpius*, 287 Wis. 2d 44, ¶¶5-7.  The circuit court granted the State's petition and committed Schulpius to a secure mental health treatment facility.  *Id.*, ¶7.   Schulpius was later placed on supervised release, but his

---

[1] Because the relevant statutory language has not changed, all references to the Wisconsin Statutes are to the 2019-20 version.

2

supervision was revoked when it was discovered that Schulpius violated his conditions of release.

¶3      In October 2019, Schulpius filed a petition for discharge. Schulpius's witness list for this discharge trial included Amity Olson, a treatment provider for Schulpius at Sand Ridge Secure Treatment Center. The witness list indicated that Olson would testify "to any of the incidents and opinions set forth by her in the Treatment Progress Notes[.]" The State objected to Schulpius calling Olson as a witness, arguing that she was a "mental health professional" under WIS. STAT. § 980.031(5) who had not provided a written examination report. Regardless, the State stipulated to the admission of Olson's treatment progress notes. At the final pretrial hearing, the circuit court concluded that Olson was a "mental health professional" and therefore was required to produce a pretrial examination report under § 980.031(5), but clarified that Olson's treatment notes containing her assessments and impressions of Schulpius were admissible at trial.

¶4      At trial, Dr. Anthony Jurek testified for the State. Dr. Jurek, a WIS. STAT. ch. 980 evaluator with the Department of Corrections, reviewed Schulpius's annual ch. 980 evaluations, annual treatment program reviews, unit notes, and individual treatment notes. Dr. Jurek described Schulpius's sexual offense history, which began at age 13 when he fondled and had oral sex with his six-to-seven-year-old step-sister on 30 to 40 occasions. Schulpius committed his "index offense" (i.e., the 1991 sexual assault of a child) two months before his 18th birthday.[2] Dr. Jurek testified that at the time Schulpius committed the index

---

[2] In a WIS. STAT. ch. 980 case, the "index offense" is "the most recent incident of sexual misbehavior resulting in official sanction." *State v. Mark*, 2008 WI App 44, ¶47, 308 Wis. 2d 191, 747 N.W.2d 727.

offense, Schulpius had his own apartment and was living on his own. Schulpius befriended a 24-year-old woman who claimed to be in a bad relationship and invited the woman and her four-year-old son to stay with him, so that she could leave the relationship. While babysitting the boy, Schulpius performed oral sex on him and made the boy do the same to him. Schulpius was convicted of first-degree sexual assault of a child and sentenced to prison. Just prior to his release, the State filed the ch. 980 commitment petition underlying these proceedings.

¶5 Dr. Jurek testified that Schulpius initially participated in penile plethysmograph assessments ("PPG") at Sand Ridge which showed he had "sexual arousal to prepubescent children" and "very little sexual interest in adult sexual partners." Schulpius eventually "showed a capacity to interfere in his sexual interest in children," but "[h]e was never really able to establish a significantly competing response for adults compared to the interest pattern that he had in children."

¶6 Dr. Jurek also testified that Schulpius participated in polygraph testing to verify his sexual offense history during his initial time at Sand Ridge. However, since returning to Sand Ridge in 2017 after his supervised release was revoked, Schulpius had refused to participate in PPGs or polygraphs. Dr. Jurek noted that Schulpius's "unwillingness to participate in polygraph verification of his denials of masturbating while fantasizing about deviant content makes it impossible for me to assume he would be successful in the community on supervised release."

¶7     Turning to the criteria for commitment under WIS. STAT. § 980.02(2),[3] Dr. Jurek testified that he had concluded that Schulpius has two mental disorders that predispose him to acts of sexual violence: pedophilia and antisocial personality disorder with narcissistic features. He then addressed Schulpius's risk of recidivism, and described several actuarial assessment tools that evaluators use to calculate a person's overall risk of reoffending. Dr. Jurek first described Schulpius's "static" risk factors, such as age, gender of the victim, relation to the victim, and past criminal behavior; such factors will always indicate "an additional risk" of reoffending. Dr. Jurek used the Static-99 assessment instrument to determine that Schulpius's static risk of reoffending was somewhere between 20.7% and 30.9% after five years. However, given Schulpius's relative youth—47 years old at the time of Dr. Jurek's assessments—Dr. Jurek concluded that Schulpius's lifetime risk of reoffending was significantly higher than that, noting that the Static-99 does not consider unreported sexual offenses in measuring risk. Dr. Jurek testified that the formula recommended in the literature to account for unreported offenses is to take the five-year estimate of reoffending and multiply it by two.

¶8     Dr. Jurek addressed his decision to use the Static-99 formula despite the fact that it is not typically used for assessing juvenile offenders, due to a tendency to overstate their risk of reoffending. He explained that the typical juvenile sex offender does not go on to reoffend as an adult, and their victims are

---

[3] "A petition filed under [WIS. STAT. ch. 980] shall allege that all of the following apply" to the subject of the petition: first, the person must have been convicted of or found delinquent for a sexually violent offense, or the person has been found not guilty of a sexually violent offense by reason of mental disease or defect; second, the person has a mental disorder; and third, the person is a danger to others "because the person's mental disorder makes it likely that he or she will engage in acts of sexual violence." WIS. STAT. § 980.02(2).

5

often close in age to the offender. Dr. Jurek justified the use of the Static-99 formula because Schulpius was not a typical juvenile offender. Schulpius was only two months shy of his 18th birthday when he committed his index offense, and at that time, he was living on his own, as an adult. Schulpius pursued a woman in her 20s for the purpose of gaining access to her four-year-old son. Dr. Jurek determined that Schulpius is "motivated by a deviant arousal pattern" and is "very much not like the typical juvenile offender."

¶9      In addition to static risk factors, Dr. Jurek assessed Schulpius's "dynamic risk factors" using the Stabel-2007 assessment tool, which accounts for changeable circumstances like relationship stability and social influences. Dr. Jurek also measured Schulpius's level of psychopathy. Schulpius scored high on both assessments, raising concern for increased risk of recidivism. Dr. Jurek testified that Schulpius's treatment records did not mitigate his high dynamic risk because of his refusal to undergo polygraph and PPG tests to verify his treatment progress. Based on these risk assessments, Dr. Jurek testified to a reasonable degree of certainty that it was "much more likely" than not that Schulpius would engage in future acts of sexual violence.

¶10     Schulpius called Dr. Lakshmi Subramanian, a psychologist and the director of the Sand Ridge evaluation unit, to testify in support of his discharge petition. Dr. Subramanian classified Schulpius as a juvenile offender because he was under 18 years old when he committed his index offense. Dr. Subramanian relied on two studies that measured the recidivism rate for juvenile sexual offenders and concluded that Schulpius presented only a 16.4% lifetime chance of reoffending. Dr. Subramanian also testified that Schulpius's refusal to undergo polygraph or PPG testing did not change her assessment of his progress in treatment. On cross-examination, Dr. Subramanian agreed that the Static-99

coding rules provide that the tool may be used to assess a juvenile offender's risk if three conditions are met: (1) the offender was 17 years old at the time of the offense; (2) the offender was at least 18 years old when he or she was released on the index offense; and (3) the offense itself is "similar in nature to a typical sex offense committed by adult offenders."

¶11 The circuit court denied Schulpius's petition for discharge. It observed that the parties' agreed that Schulpius had been convicted of a sexually violent offense and had a qualifying mental disorder. The "real question" was whether Schulpius was more likely than not to commit a future act of sexual violence. The circuit court stated that the significant differences in the experts' assessments of Schulpius's risk came down to whether, based on his index offense, Schulpius should be considered a juvenile or adult offender.

¶12 The circuit court found Dr. Jurek's testimony to be "more credible, compelling, and more thorough than that asserted by Dr. Subramanian." Specifically, the circuit court found Dr. Subramanian's testimony in support of treating Schulpius as a juvenile offender to be "problematic." Instead, the circuit court relied on "the credible testimony" of Dr. Jurek that "Schulpius is not 'purely' a juvenile-only sex offender as proposed by Dr. Subramanian." The court continued: "His index offense did not involve a peer as a co-offender. It involved a 4-year-old boy. His index offense involved 'planning'—he got close to the victim's mother and then volunteered to babysit for the child so that he could have access to the child without supervision." The circuit court concluded that "Schulpius has a well-established history of being sexually aroused by

prepubescent children" and "[these] are not traits of a typical juvenile sex offender; they are traits of an adult sex offender."[4]

¶13 Schulpius appeals from the circuit court's order denying his petition for discharge. Importantly, a few months before Schulpius filed his notice of appeal in this case, he filed new petitions for discharge or supervised release. The parties resolved the petitions by stipulating to a joint recommendation for supervised release, which the circuit court granted in February 2024.[5]

## DISCUSSION

¶14 Schulpius appeals from the circuit court's order denying his petition for discharge from his WIS. STAT. ch. 980 commitment, arguing that the circuit court erred by excluding Olson from testifying at his discharge trial. Whether Olson should have been allowed to testify is subject to harmless error analysis. "The court shall, in every stage of a proceeding under this chapter, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party." WIS. STAT. § 980.038(6). An error is harmless if it is clear beyond a reasonable doubt that a rational factfinder would have reached the same result absent the error. *State v. Harvey*, 2002 WI 93, ¶46, 254 Wis. 2d 442, 647 N.W.2d 189. Whether an alleged error was harmless is a question of law that we

---

[4] The circuit court also found that Dr. Subramanian gave "insufficient weight" to Schulpius's "refusals to engage in polygraphs and PPGs that could verify his current progress in treatment and care." The court explained: "Schulpius (like others who are committed under WIS. STAT. ch. 980) is expected to comply with treatment and rules before it can be assumed that his risk can be managed safely in the community."

[5] Though the order granting supervised release is not part of the record before us, this court may take judicial notice of electronic circuit court docket entries. *See Kirk v. Credit Acceptance Corp.*, 346 Wis. 2d 635, ¶5 n.1, 2013 WI App 32, 829 N.W.2d 522.

decide independently. ***State v. Ziebart***, 2003 WI App 258, ¶26, 268 Wis. 2d 468, 673 N.W.2d 369.

¶15 Schulpius argues that the circuit court's decision to exclude Olson's testimony was not harmless because Olson's testimony would have contradicted Dr. Jurek's conclusion that Schulpius was not participating in treatment. According to Schulpius, Olson's treatment progress notes indicate that she agreed with Schulpius that he had devised methods to manage his deviant thoughts, and if she had been allowed to testify, she would have explained why Schulpius was successfully participating in treatment despite his refusal to undergo polygraph or PPG testing.

¶16 The State argues that excluding Olson's testimony was harmless because Schulpius told the circuit court that Olson would testify only about the incidents and opinions expressed in her treatment progress notes, and the court ruled that those notes were admissible. Moreover, Olson's testimony would not have been relevant to the elements the State had to prove in order to deny Schulpius's discharge from commitment (e.g., that Schulpius was no longer sexually dangerous).

¶17 We agree with the State. We assume without deciding that the circuit court erred by excluding Olson's testimony, and we conclude that the error was harmless.[6]

---

[6] Because we conclude that the alleged error of excluding Olson's testimony is harmless, we do not address whether Olson was required to submit a report under WIS. STAT. § 980.031(5). *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

¶18 On appeal, Schulpius argues that the circuit court's decision to exclude Olson's testimony prejudiced both his request for discharge and his alternative request for supervised release if he was not discharged from commitment. However, because Schulpius was already granted supervised release in February 2024, Schulpius's argument that the circuit court should have granted him supervised release is moot.[7] Therefore, we analyze only whether the alleged error of excluding Olson's testimony was harmless with respect to the circuit court's decision to deny Schulpius's petition requesting discharge from his WIS. STAT. ch. 980 commitment.

¶19 At a discharge trial under WIS. STAT. ch. 980, the State must prove that the committed person: (1) has been convicted of a sexually violent offense; (2) has a mental disorder; and (3) is dangerous to others because his or her mental disorder makes it more likely than not that he or she will engage in a future act of sexual violence. WIS. STAT. § 980.02(2). The circuit court must discharge the person from the commitment unless the State proves "by clear and convincing evidence" that the person still "meets the criteria for commitment as a sexually violent person." WIS. STAT. § 980.09(3)-(4).

¶20 The first two factors are not in dispute. As to dangerousness, parties disagree with respect to whether Schulpius, who committed his index offense when he was 17 years old, should be considered a juvenile offender.

---

[7] "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. The State argued in its respondent's brief that the issue of supervised release is moot because Schulpius was placed on supervised release in February 2024 after filing new petitions, and Schulpius did not respond to the State's argument in his reply brief. We take this lack of reply as a concession that the issue of supervised release is moot. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

Dr. Subramanian considered Schulpius to be a juvenile offender because he was under 18 years old when he committed his index offense. She testified that the static and dynamic risk instruments overestimate the risk to recidivate for juvenile offenders, and relying on two studies that measured the recidivism rate for juvenile sexual offenders, she concluded that Schulpius presented only a 16.4% lifetime chance of reoffending. Dr. Jurek acknowledged that the risk instruments overstate the risk associated with juvenile offenders, but he testified that Schulpius should not be considered a juvenile offender. Schulpius was only two months shy of his 18th birthday when he committed his index offense, and he actively pursued an adult woman for the purpose of gaining access to her four-year-old child. Dr. Jurek employed both the Static-99 and Stabel-2007 to assess Schulpius's risk of recidivism and concluded that Schulpius was "much more likely" than not to engage in future acts of sexual violence.

¶21 The circuit court rejected Dr. Subramanian's opinion that Schulpius should be regarded as a juvenile offender. It explained that Schulpius was almost 18 when he committed his index offense, and the offense "did not involve a peer as a co-offender. It involved a 4-year-old boy." The offense involved planning, e.g., getting close to the victim's mother and volunteering to babysit so that he could have access to the victim without supervision. The circuit court found that "Schulpius has a well-established history of being sexually aroused by prepubescent children. [These] are not traits of a typical juvenile sex offender; they are traits of an adult sex offender." Olson's testimony regarding the incidents and opinions contained in her treatment progress notes would not have been responsive to the determinative issue of whether Schulpius should be considered a juvenile offender.

¶22     Moreover, because Schulpius did not introduce any of Olson's treatment progress notes at trial, we are left to speculate as to what Olson's testimony would have been if she had been allowed to expound upon her notes.[8] Schulpius asserts that in one of Olson's notes, she agreed with him that he was successfully participating in treatment despite his refusal to undergo polygraph and PPG testing because he had devised intervention techniques to manage his deviant thoughts.

¶23     Schulpius overrepresents the significance of Olson's statement in the treatment note upon which he relies.   In the note, Schulpius and Olson were discussing a treatment evaluation that concluded he was not making significant progress in treatment due to his unwillingness to participate in polygraph testing.[9] The evaluation explained that he was not consistently managing his dynamic risk factors, citing several examples, and although Schulpius acknowledged the accuracy of these examples, the evaluation "did not include how he managed or intervened, which [Olson] agreed with."   On its face, this note states that Olson agreed that the evaluation had not included how Schulpius managed or intervened with his deviant thoughts in the examples listed in the evaluation.   It does not state that Olson agreed that Schulpius's intervention methods were effective at mitigating his dynamic risk factors.

¶24     The note also does not state that Olson agreed that Schulpius's unidentified intervention methods were adequate substitutes for objective means

---

[8] Schulpius did not introduce any of Olson's notes at trial, but the State introduced three. Schulpius's argument is supported entirely by his speculation about the meaning of one sentence in one of those notes.

[9] The note does not mention anything about Schulpius's refusal to undergo PPG testing.

of verifying treatment progress like polygraph and PPG testing. Dr. Jurek testified at trial that these tests are used to give objective assessments of an individual's treatment progress, and it is unclear how Olson's testimony elaborating on this particular note would address the circuit court's concern that Schulpius was refusing to engage in testing "that could verify his current progress in treatment and care." In other words, even if Olson would have testified that she agreed that Schulpius had devised effective methods to manage his deviant thoughts, this testimony would have been non-responsive to the circuit court's concern that Schulpius was refusing to engage in objective tests meant to verify his treatment progress.

## CONCLUSION

¶25 Assuming without deciding that the circuit court erred by not allowing Olson to testify at Schulpius's discharge trial, we conclude that the error was harmless. According, we affirm the circuit court's denial of Schulpius's WIS. STAT. ch. 980 discharge petition.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

13